**In re Ira L. CHAPMAN, Jr., Debtor.**

**Grange Mutual Casualty Co. and Ann Pickens, Plaintiffs,**

**v.**

**Ira L. Chapman, Jr., Defendant.**

**Bankruptcy No. 98–3142.**

United States Bankruptcy Court,
N.D. Ohio.

Nov. 25, 1998.

David J. Chernosky, Cleveland, OH, for Plaintiffs.

Herbert E. Adams, Fremont, OH, for Defendant.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court upon the Plaintiffs' Motion for Summary Judgment, and Memorandum in Support; and the Defendant's Response to the Plaintiffs' Motion, and Memorandum in Support. This Court has reviewed the arguments of Counsel, the exhibits, as well as the entire record of the case. Based upon that review, and for the following reasons, the Court finds that the Plaintiffs' Motion for Summary Judgment should be GRANTED; and the Plaintiffs' claim against the Defendant in the amount of Twenty-three Thousand Seven Hundred Twenty-four and 86/100 Dollars ($23,724.86) is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

### FACTS

On March 5, 1998, the Defendant/Debtor, Ira L. Chapman (hereinafter Debtor) filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code. Ann Pickens, the Co-Plaintiff in this action (hereinafter Ms. Pickens), was listed in the Debtor's bankruptcy schedules as a party holding an unsecured nonpriority claim. This adversarial proceeding was subsequently brought on June 18, 1998, to have this claim determined nondischargeable under 11 U.S.C. § 523(a)(6) on the basis that the claim arose from willful and malicious conduct.

The events giving rise to this adversarial proceeding stem from an automobile accident that occurred between the Debtor and Ms. Pickens. The Parties' version of events immediately prior to the accident conflict with one another, but this much seems true. In the earlier afternoon hours on June 20, 1996, both the Debtor and Ms. Pickens were traveling north in their respective vehicles on a township road in Hancock County, Ohio. After going some distance the Debtor, who was directly in front of Ms. Pickens, abruptly stopped his vehicle. Immediately thereafter, the Debtor placed his vehicle into reverse, and collided with the front of Ms. Pickens' vehicle. The force and speed of the impact caused Ms. Pickens' vehicle to sustain heavy front end damage. In addition, Ms. Pickens suffered injuries to her shoulder and neck as a result of the collision. The Debtor's vehicle only sustained light damage.

A short time after the collision, a deputy and a sergeant from the Hancock County Sheriff's Office were dispatched to the accident scene at which time statements were taken from both of the Parties. The Debtor's version of events was that Ms. Pickens had come up behind him at a high rate of speed, and struck the rear end of his vehicle. On the other hand, Ms. Pickens' account of events was that the Debtor had rammed his car into her vehicle after abruptly stopping in front of her. In addition, an on-site investigation of the accident scene was conducted by the Police Officers in which the general layout of the vehicles was noted, along with other matters such as the location of tire marks, debris and engine fluids. Thereafter, it was decided by the Sheriff's Office to commence a criminal investigation into the matter since the evidence discerned at the accident scene comported with Ms. Pickens' version of events.

The criminal investigation eventually yielded an eyewitness to the accident who corroborated Ms. Pickens' story. In addition, the investigation also uncovered that beginning in July of 1994 the Debtor and Ms. Pickens had been involved in a relationship which, for reasons not relevant in this proceeding, came to an abrupt end in January of 1996. Moreover, the investigation revealed that after the

Parties' relationship had ended various disparaging incidents had taken place between the Debtor and Ms. Pickens which, regardless of their veracity, certainly created an atmosphere of animosity between the Parties. Sometime later, the findings from the criminal investigation were turned over to the Hancock County Prosecutor's Office, who in turn prosecuted the Debtor for Felonious Assault under O.R.C. § 2903.11. The Debtor was subsequently found guilty of the charge, and ordered to pay Ms. Pickens restitution.

█ Eventually it was determined that the damage to Ms. Pickens vehicle totaled Four Thousand Six Hundred Sixty–Nine and 73/100 Dollars ($4,669.73), with an additional Nineteen Thousand Fifty-five and 13/100 Dollars ($19,055.13) in damages being incurred by Ms. Pickens for her personal injuries. Grange Mutual Insurance Company (hereinafter Grange Mutual), the other Co-Plaintiff in this action, indemnified Ms. Pickens for all these costs pursuant to a policy of insurance affording medical and uninsured motorist coverage. Now Grange Mutual, as a subrogee to any claim Ms. Pickens may have against the Debtor for the automobile accident, asserts that any amount the Debtor is found to owe Ms. Pickens should be determined a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(6).[1]

## LAW

Section 523(a) of the Bankruptcy Code provides in pertinent part:

(a) A discharge under section 727, 1141, 1228[a] 1228(b), or 1328(b) of this section does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

1. The Court has no evidence before it which would demonstrate that the Plaintiffs have obtained a civil judgment against the Debtor for the automobile accident. However, this does not affect their claim against the Debtor for purposes of a nondischargeability proceeding under 11 U.S.C. § 523(a)(6). 11 U.S.C. § 101(5) states, that a claim is any "right to payment, whether or

## DISCUSSION

Under 28 U.S.C. § 157(b)(2)(I), a determination as to the dischargeability of a particular debt is a core proceeding. Thus, this matter is a core proceeding.

The Plaintiffs' Complaint to determine the dischargeability of the Defendant's Debt comes before the Court upon the Plaintiffs' Summary Judgment Motion. The standard for a summary judgment motion is set forth in Fed.R.Civ.P. 56, which is made applicable to this proceeding by Bankruptcy Rule 7056, and provides in pertinent part: A movant will prevail on a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In order to prevail, the movant must demonstrate all the elements of the cause of action. *R.E. Cruise, Inc. v. Bruggeman*, 508 F.2d 415, 416 (6th Cir.1975). When a party contests the dischargeability of a debt under § 523(a)(6) this entails establishing that there are no triable issues regarding whether the debtor's conduct was both willful and malicious. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991); *Perkins v. Scharffe*, 817 F.2d 392, 394 (6th Cir.1987); *In re Clayburn*, 67 B.R. 522 (Bankr.N.D.Ohio 1986). However, upon the moving party meeting the foregoing burden, the nonmoving party may not thereafter rest on his pleadings, but is instead required to set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In making the determination of whether the parties have met their respective burdens, the Court is directed to view all facts in the light most favorable to the party opposing the summary judgment motion.

not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." While debt "means liability on a claim." 11 U.S.C. § 101(12); *see e.g.*, *Continental Assurance Co. v. American Bankshares Corp.*, 46 B.R. 206 (E.D.Wis.1985).

*Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 586–588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see also In re Bell*, 181 B.R. 311 (Bankr.N.D.Ohio 1995).

The essence of the Plaintiffs' argument holds that the adjudication of the Debtor's guilt under O.R.C. § 2903.11 for Felonious Assault, in connection with the automobile accident with Ms. Pickens, conclusively establishes that the Debtor's conduct was both willful and malicious pursuant to § 523(a)(6). The Court does agree that on its face a conviction for Felonious Assault would seem to give rise to the type of behavior that would bar a debtor's discharge under § 523(a)(6). However, the Plaintiffs do not specify under what legal standard they make their allegation. Specifically, this Court does not know whether the Plaintiffs are asserting that the Debtor is collaterally estopped by the state court conviction from contesting the dischargeability of his debt, or whether the Plaintiffs are asserting that the Debtor's conviction for Felonious Assault under O.R.C. § 2903.11, together with the evidence used to sustain the conviction, is by itself conclusive evidence of willful and malicious conduct for purposes of § 523(a)(6). Nonetheless, this lack of specificity is not fatal to the Plaintiffs' case. Fed.R.Bankr.P. 7008; *Goodman v. Mr. Goodbuys of New York Corp., Inc.*, 164 B.R. 24, 27 (Bankr.E.D.N.Y.1994). Consequently, the Court will examine each supposition separately and then rule accordingly.

## COLLATERAL ESTOPPEL ANALYSIS

■ Collateral estoppel, also known as "issue preclusion," prevents the same parties or their privies from re-litigating facts and issues in a subsequent suit that were fully litigated in a prior suit. *Thompson v. Wing*, 70 Ohio St.3d 176, 183, 637 N.E.2d 917, 923 (1994). There is no question that collateral estoppel principles apply to bankruptcy proceedings, and can be used in nondischargeability actions to prevent re-litigation of issues already decided in a state court. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Howev-

er, for the following reasons, the Court will not apply collateral estoppel to the Debtor's criminal conviction.

■ First, for this Court to apply the doctrine of collateral estoppel to a nondischargeability proceeding brought pursuant to § 523(a)(6), there must have been a specific finding of willful and malicious conduct in the state court proceeding based upon standards which are identical to those in the dischargeability proceedings. *Spilman v. Harley*, 656 F.2d 224, 226 (1981); *see also Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654 (1991). However, this will not occur when incorporating the standards set forth in Ohio's Felonious Assault Statute, and the findings made therefrom, to a nondischargeability proceeding brought pursuant to § 523(a)(6). A close examination of Ohio's Felonious Assault Statute explains why.

■ O.R.C. § 2903.11, reads in pertinent part:

(A) No person shall knowingly:

(1) cause serious physical harm to another or another's unborn;

(2) cause or attempt to cause physical harm to another or another's unborn by means of a deadly weapon or dangerous ordnance, as defined in Section 2923.11 of the Revised Code.

The first thing discerned is that the *Mens Rea* standard required to sustain a conviction under § 2903.11 is different from that which is used to deny a debtor's discharge under § 523(a)(6). Precisely, O.R.C. § 2903.11 requires that a person "*knowingly* cause serious physical harm to another" to be convicted of felonious assault. By comparison, § 523(a)(6) requires a willful or intentional act on the part of the debtor to justify denying their discharge.[2] Consequently, as the quantum of proof required to establish the foregoing mental states differ, it is inappropriate to apply collateral estoppel principles from one statute to the other.

---

**2.** Under Ohio Law and Federal Law, the terms willful and intentional are generally synonymous with one another. *Kawaauhau v. Geiger*, 523 U.S. 57, ——, 118 S.Ct. 974, 977–78, 140

L.Ed.2d 90 (1998); *Monsler v. Cincinnati Casualty Co.*, 74 Ohio App.3d 321, 328, 598 N.E.2d 1203, 1207 (1991); *See also Payne v. Vance*, 103 Ohio St. 59, 133 N.E. 85 (1921).

Supporting this premise is the fact that the Ohio Criminal Code, under which the Debtor was convicted, clearly delineates between the evidence required to make a finding that a party acted knowingly, versus a finding that the person acted willfully. O.R.C. § 2901.22.[3] In addition, Ohio case law has held that when "knowledge" is an essential element to a criminal offense, a finding that a defendant acted with the requisite mental state does not later bar that person from re-litigating, in a subsequent civil proceeding, the issue of whether he acted willfully or intentionally. For example, in *Wiggins v. Hampton*, an Ohio State Appellate Court specifically held that when a plaintiff was struck by the defendant's car and sued for personal injuries, the defendant's subsequent conviction for assault did relieve the defendant's insurer from the duty to defend the civil action since the culpable mental state of "knowingly" required to sustain a conviction for assault does not include the element of intent as is required to abrogate the insurer's duty to defend. 78 Ohio App.3d 669, 605 N.E.2d 1264 (Ohio App.1992); *see also State v. Dunham*, 118 Ohio App.3d 724, 693 N.E.2d 1175 (Ohio App.1997).

In addition, an examination of O.R.C. § 2903.11 also reveals that there is no specific requirement that the accused act maliciously as is specifically required to deny a debtor's discharge under § 523(a)(6). The Court does agree that it is difficult to fathom of many situations where a person could be convicted of Felonious Assault under O.R.C. § 2903.11 and not have acted maliciously. Nevertheless, Ohio case law has specifically held that a finding of malice is not necessary to sustain a conviction under O.R.C. § 2903.11. *State of Ohio v. Tatonetti*, 1983 WL 6255 *4 (Ohio App.1983). Accordingly, based· on the foregoing analysis, the Court finds that a conviction for Felonious Assault under O.R.C. § 2903.11 would not entail a specific finding of willful and malicious conduct based upon standards which are identical to those in a nondischargeability proceeding brought pursuant to § 523(a)(6).

The second reason collateral estoppel is not applicable in this case is that Ohio's rules on collateral estoppel, which this Court is bound to follow,[4] generally allow issues determined in a criminal action to be re-litigated in a subsequent civil action. *Phillips v. Rayburn* 113 Ohio App.3d 374, 381–82, 680 N.E.2d 1279, 1284 (1996); *Walden v. Ohio*, 47 Ohio St.3d 47, 51–52, 547 N.E.2d 962, 965–67 (1989); *Manley v. Rufus Club Mozambique, Inc.*, 111 Ohio App.3d 260, 263, 675 N.E.2d 1342, 1344 (1996). This is done for two reasons. First, under Ohio law, mutuality of the parties is required for collateral estoppel to apply which only occurs when all the parties (or their privies) to the present proceeding were bound by the judgment in the prior proceeding. *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193, 443 N.E.2d 978 (1983); *Ohio v. Williams*, 76 Ohio St.3d 290, 294–295, 667 N.E.2d 932, 935–936 (1996). However, such mutuality generally does not exist when applying collateral estoppel from a criminal proceeding to a subsequent civil proceeding because the state, and not both civil litigants, was a party to the criminal proceeding. For example, just as the Plaintiffs in this action were not a party with the Debtor in the criminal action, and thus would not be bound by the Debtor's acquittal; the converse is also true in that the Plaintiffs cannot now assert that the Debtor is bound by issues previously determined during his criminal conviction.

---

**3.** O.R.C. § 2901.22 provides, in relevant part:

(A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

**4.** The Sixth Circuit Court of Appeals, following the Supreme Court's decisions on the Full Faith and Credit Clause of the United States Constitution, has held that this Court must give the same issue preclusive effect to a state court judgment as it would be given under that state's law. *In re Calvert*, 105 F.3d 315 (6th Cir.1997); 28 U.S.C. § 1738.

Second, Ohio law generally considers it inequitable to give issue preclusion effect from a criminal proceeding to a later civil proceeding due to the inherent differences in these actions. These differences being best summed up by the Court in *Phillips v. Rayburn*, which stated,

[w]e ... find that the advantages gained by preclusion do not outweigh the risks inherent in allowing a criminal conviction to bind a defendant in a subsequent civil suit based on the same conduct. Procedural and discovery differences between the criminal and civil forums coupled with the defendant's dilemma over whether to testify in his own behalf or present any defense at the criminal trial make [issue] preclusion ... a precarious and, we believe, unwise practice.

113 Ohio App.3d 374, 381–82, 680 N.E.2d 1279, 1284 (1996).

Consequently, based on the foregoing analysis, the Debtor is not collaterally estopped by his conviction for felonious assault under O.R.C. § 2903.11 from re-litigating the issue of whether he acted willfully and maliciously for purposes of § 523(a)(6). Accordingly, the Parties' pleadings, motions, affidavits, and exhibits will now be examined to determine whether the Plaintiffs' claim against the Debtor should be determined nondischargeable pursuant to § 523(a)(6).

## EXAMINATION OF THE EVIDENCE TO ASCERTAIN WHETHER THE DEBTOR'S CONDUCT WAS BOTH WILLFUL AND MALICIOUS

A creditor seeking to hold its debt nondischargeable under § 523(a)(6) carries both the initial burden of production and the ultimate burden of persuasion to prove, by a preponderance of the evidence, that the elements of the statute are met. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). For purposes of a summary judgment motion, the burden of persuasion is established by showing that the moving party is entitled to prevail as a matter of law. *United States v. One 107.9 Acre Parcel of Land*, 898 F.2d 396, 398 (3rd Cir. 1990). In other words, the party moving for summary judgment must establish that the

Debtor's conduct was both willful and malicious. *In re Clayburn*, 67 B.R. 522 (Bankr. N.D.Ohio 1986).

On the other hand, the burden of production is met by showing that no genuine dispute exists as to any material fact. *Id.* A genuine issue of material fact is one that must be decided at trial because the evidence, when viewed in a light most flattering to the nonmovant, would permit a rational fact finder to resolve the issue in favor of either party. *Mack v. Great Atlantic & Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989); *see Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. However, establishing this burden is especially difficult for the creditor who seeks summary judgment when factual disputes exist as to the debtor's state of mind. *See Epprecht v. Delaware Valley Machinery, Inc.*, 407 F.Supp. 315 (E.D.Pa.1976). This is because ascertaining state of mind issues such as willfulness and maliciousness normally requires explanatory testimony by the debtor, and an assessment by the trier of fact of the debtor's demeanor and credibility. *First Texas Savings Association, Inc. v. Reed*, 700 F.2d 986 (5th Cir.1983). Nonetheless, there is no per se rule that state of mind issues are inappropriate for disposition on summary judgment as long as there is no possibility that the facts presented at trial would demonstrate a genuine issue of material fact. *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125 (6th Cir. 1992); *In re Esposito*, 44 B.R. 817, 821 (Bankr.S.D.N.Y.1984); *Bell v. Internal Revenue Service (In re Bell)*, 181 B.R. 311, 316 (Bankr.N.D.Ohio 1995); *see e.g., Norton Operating Services, Inc. v. Perry*, 119 B.R. 24, 28 (Bankr.S.D.N.Y.1990). For proceedings brought pursuant to § 523(a)(6), this analysis necessarily requires examining the interpretations the federal courts have given to the terms willful and malice under § 523(a)(6).

The issue of what constitutes willful conduct, for purposes of a nondischargeability proceeding under § 523(a)(6), has recently been addressed by the Supreme Court in *Kawaauhau v. Geiger*, 523 U.S. 57, ——, 118 S.Ct. 974, 977–78, 140 L.Ed.2d 90 (1998). Prior to the *Kawaauhau* decision there was a split of opinion in the circuit courts as to the

requisite mental state needed to constitute a willful act under § 523(a)(6). The lenient view held that willful conduct only required an intentional act that necessarily resulted in an injury, while the stricter view held that willful conduct necessarily entails an act done with the intent to cause injury. *See e.g., In re Cecchini*, 780 F.2d 1440 (9th Cir.1986); *In re Franklin*, 726 F.2d 606, 610 (10th Cir. 1984); *Matter of Quezada*, 718 F.2d 121, 123 (5th Cir.1983); *In re DeRosa*, 20 B.R. 307 (Bankr.S.D.N.Y.1982); *In re Fussell*, 15 B.R. 1016 (W.D.Va.1981); *In re McGiboney*, 8 B.R. 987 (Bankr.N.D.Ala.1981). The Sixth Circuit Court of Appeals originally adopted the lenient view holding, "a wrongful act done intentionally, which necessarily produces harm ... constitute[s] a willful ... injury" for purposes of § 523(a)(6). However, the Supreme Court in *Kawaauhau* reversed this holding, adopting the stricter version, by stating, "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." 523 U.S. at ——, 118 S.Ct. at 978. However, what the Supreme Court's holding in *Kawaauhau* did not make precisely clear is exactly what level of intent to injure is required.

It is generally accepted that there exists three levels of intentional conduct. The most permissive view, adopting the classical tort doctrine, holds that an injury is intentional if the injury was the result of the natural and probable consequences of the intentional act. By comparison, the middle range view maintains that an injury is only intended if the actor both intended the act and also intended to cause some kind of injury or damage. Thus, unlike the foregoing view, in which the actor need not have specifically intended to cause an injury, here the actor must actually have intended some sort of resulting harm. Although, like the most permissive view, the injury need not be of the same nature and to the same extent as that actually incurred. Finally, the strictest

view holds that for an injury to be intended, the actor must not only have intended to cause an injury, but must have also intended to cause the particular type of harm actually suffered.[5] The importance in ascertaining exactly which of these three standards applies becomes readily apparent when one looks at the facts of this case.

For example, if the strictest view is what was intended by the Supreme Court, then the Plaintiffs must show not only that the Debtor intended to cause damage to Ms. Pickens' vehicle, and to Ms. Pickens' person, but also that the Debtor intended to cause large front end damage to Ms. Pickens' vehicle and shoulder and neck injuries to Ms. Pickens' person. On the other hand, if the middle range view is what was intended by the Supreme Court, the Plaintiffs must only show that the Debtor intended to cause some type of injury to either Ms. Pickens' vehicle or to her person. Finally, if the most permissive view is what was intended by the Supreme Court, all that needs to be shown in order for the Plaintiffs to establish an intentional act under § 523(a)(6) is that the Debtor knew that some type of injury to either Ms. Pickens' person or to her vehicle was substantially certain to occur as the result of his conduct.

In the *Kawaauhau* opinion the Supreme Court does give some guidance as to what standard is required. Specifically, the Supreme Court's language in *Kawaauhau* strongly indicates that the type of conduct justifying a denial of a debtor's discharge under § 523(a)(6) only requires the same type of intentional conduct that would give rise to liability for an ordinary intentional tort. If this is the case, then the most permissive version of intent is applicable, as all that is generally required to hold a party liable for an intentional tort is that they commit the act with the intent to injure or with the belief that an injury is substantially certain to occur. *Jones v. VIP Development Co.*, 15 Ohio St.3d 90, 95, 472 N.E.2d 1046 (1984) citing Restatement of the Law 2d, Torts (1965) 15, Section 8A.

---

**5.** The least strict view is known as general intent or inferred intent, while the stricter two views are known as specific intent.

■ Supporting this view is the fact that the Supreme Court cites with approval the Restatement (Second) of Torts § 8(A),[6] and states in dicta that, "§ 523(a)(6)'s formulation triggers in the lawyer's mind the category 'intentional torts' ..." In addition, the Court in *Kawaauhau* cites with approval *McIntyre v. Kavanaugh*, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916), which held that, "[a] wilful disregard of what one knows to be his duty ..., and which necessarily causes injury ... may be said to be done wilfully." Moreover, the real gist of the Supreme Court's holding in *Kawaauhau* was only aimed at eliminating the possibility that any debts arising from reckless or negligently inflicted injuries fell within the scope of § 523(a)(6). *Id.* at ——, 118 S.Ct. at 978. In fact, the *Kawaauhau* case centered around whether damages awarded for a doctor's negligent care of a patient were dischargeable in bankruptcy, with the Supreme Court ruling that such damages were dischargeable. Hence, everything in the *Kawaauhau* opinion indicates to this Court that the Supreme Court of the United States only meant to adopt the most permissive standard for willful conduct for purposes of nondischargeability proceedings brought pursuant to § 523(a)(6). Accordingly, the Court holds that a person will be deemed to have acted willfully, for purposes of denying that person's discharge in bankruptcy under § 523(a)(6), when that person acts with the intent to cause injury, or is substantially certain that an injury will occur. *See In re Adams*, 147 B.R. 407, 414–15 (Bankr. W.D.Mich.1992).[7]

■ Thus, having established the requisite intent to deny a debtor's discharge under § 523(a)(6), the question now becomes whether there is sufficient evidence before the Court to establish that there are no genuine issues of material fact as to whether the Debtor's conduct comports with the requisite intent. The Plaintiffs, in support of their claim that the Debtor acted willfully, have submitted to the Court as evidence copies of, (1) the Sheriff's Office Accident Report and Investigation with attached witness statements from Ann Pickens and the other eyewitness to the accident, and (2) the Judgment Entry entered by the Hancock County Court of Common Pleas adjudicating the Debtor guilty of Felonious Assault pursuant to O.R.C. § 2309.11. However, before considering this evidence as it relates to the Debtor's willful conduct, one remaining issue must be addressed. This Court is cognizant of the fact that when ruling on a summary judgment motion, it may only consider that portion of the submitted material which would be admissible or useable at trial. *Walker v. Wayne County, Iowa*, 850 F.2d 433, 434 (8th Cir.1988), *cert. denied sub nom., Martin v. Walker*, 488 U.S. 1008, 109 S.Ct. 791, 102 L.Ed.2d 783 (1989). Consequently, as the foregoing evidence is clearly hearsay evidence, the Plaintiffs may not rely on this evidence for purposes of their Motion for Summary Judgment unless such evidence falls within one of the specifically enumerated exceptions to the hearsay rule. *Id.* at 435; Fed.R.Evid. 801(C).

■ In the instant case, the Court finds that the Accident Report and Investigation is admissible under Fed.R.Evid. 803(8)(B) & (C) for the factual findings and matters observed by the Police Officers. *See Baker v. Elcona Homes Corp.*, 588 F.2d 551 (6th Cir.1978); *Miller v. Field*, 35 F.3d 1088 (6th Cir.1994). However, the statements made by Ms. Pickens and the other eyewitness would not be admissible as they would be considered hearsay within hearsay. Fed.R.Evid. 805. In addition, the judgment of the Debtor's conviction for Felonious Assault is admissible under Fed.R.Evid. 803(22) "to prove any fact essential to sustain the judgment." However, it should be noted that section 803(22) of the Federal Rules of Evidence does not make the prior conviction conclusive evidence of the facts determined

---

6. The Restatement (Second) of Torts § 8(A) states, "[t]he word 'intent' is used ... to denote that the actor desires to cause consequences of his act, or that he believes that consequences are substantially certain to result from it."

7. The Court notes that this holding does not go contrary to the purpose of the exceptions to discharge outlined in § 523(a) which are designed to prevent the debtor from avoiding, through a bankruptcy filing, the consequences of wrongful conduct.

in the first action. However, it does allow the Court to give effect to the prior judgment in the current proceeding "for what it is worth." Notes of the Advisory Committee, Fed.R.Evid. 803(22).

■ Upon examining the admissible evidence, there is no doubt to the Court that the Debtor intended to cause injury to Ms. Pickens and/or her vehicle, or was substantially certain that some type of wrongful injury would result from his actions. First, there is no doubt that the Debtor intentionally placed his car into reverse when he was driving immediately in front of Ms. Pickens. In fact, the Debtor later admitted, in an affidavit to the Court, to placing his car into reverse, thereby recanting his story to the Police that Ms. Pickens had rammed him from behind. In addition, the Accident Report and Investigation conducted by the Sheriff's Office clearly exhibited that tire marks and debris had been left by the Debtor's vehicle demonstrating that the Debtor had "peeled out" while traveling towards Ms. Pickens' vehicle. Normal experience teaches us that automobiles do not ordinarily leave tire marks unless they are abruptly stopping or attempting to quickly accelerate from a standstill. Based upon this, the Court can figure no rational basis as to why the operator of a motor vehicle would quickly, and with much impetus, place a car into reverse and head directly for the car immediately behind them, other than to intentionally cause some damage to the other vehicle, or at least be substantially certain that some type of damage would occur. Further supporting this view is the extent to which Ms. Pickens' vehicle was damaged, exhibiting to the Court a clear resolution, on the part of the Debtor, to cause injury to Ms. Pickens. Finally, when one combines the foregoing evidence with the fact that there exists a large degree of animosity between the Parties, a clear motive for the Debtor's actions becomes apparent.

■ The Debtor, however, proffers an explanation. In an affidavit to the Court, the Debtor states that he placed his vehicle into reverse and drove towards Ms. Pickens' vehicle in an attempt to get Ms. Pickens to pass him. Although, this Court must give the Debtor, as the nonmoving party, the benefit of all reasonable inferences, the production of a mere scintilla of evidence in support of a defense will not forestall summary judgment, as the party opposing the summary judgment motion must do more than simply show that there is some metaphysical doubt as to the material facts. *Martin v. A.O. Smith Corp.,* 931 F.Supp. 543 (W.D.Mich.1996). Consequently, it is still appropriate for the Court to grant summary judgment if the nonmoving party rests merely upon improbable inferences and unsupported speculation. *Coll v. PB Diagnostic Systems, Inc.,* 50 F.3d 1115 (1st Cir.1995); *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5 (1st Cir. 1990). In this case, the Court finds the Debtor's explanation simply implausible. For example, simple reason cannot conceive of why the operator of a motor vehicle would place their vehicle into reverse in an attempt to get another vehicle to pass. Supporting this supposition is the fact that the Debtor's proffered explanation was insufficient to prevent his criminal conviction for Felonious Assault where the burden of proof is beyond a reasonable doubt. Thus, this Court will not give credence to the Debtor's explanation for the accident. Accordingly, the Court finds that the Debtor willfully caused injury to Ms. Pickens and her property.

■ The only remaining issue is now whether the Debtor maliciously caused injury to Ms. Pickens and/or her vehicle. Malicious conduct, for purposes of § 523(a)(6), is that conduct which is done without just cause or excuse, or for which there is no justification. *In re Clayburn,* 67 B.R. 522 (Bankr.N.D.Ohio 1986) citing *Wiseman v. Weingarten,* 49 B.R. 881 (Bankr.N.D.Ohio 1985). Thus, it is not necessary that the Debtor act with ill will or malevolence intent toward the victim, *McGraw v. Jordan,* 47 B.R. 712 (Bankr. N.D.Ohio 1985), or that the Debtor intend to harm the victim. *Materia v. Pereira,* 44 B.R. 248 (Bankr.D.Mass.1984).

■ It is well established that the foregoing standard for malice is clearly met when a person knowingly violates the law. *Schmidt v. Schmehl,* 57 B.R. 546 (Bankr. N.D.Ohio 1986); *Hoffman v. Ustaszewski,* 71 B.R. 282 (Bankr.N.D.Ohio 1987). Further-

more, since knowledge of the law is assumed, any violation of the law is presumed malicious for purposes of 11 U.S.C. § 523(a)(6), regardless of the subjective knowledge of the actor. *Oregon Ford Inc. v. Clayburn,* 67 B.R. 522, 525 (Bankr.N.D.Ohio 1986). As the Court in *Schmidt v. Schmehl* stated,

> It is well established that all persons are presumed to know the law. Any conduct which violates the provisions of a law must be considered to have been done with knowledge of the fact that the conduct is unlawful. Since the provisions of 11 U.S.C. Section 523(a)(6) only require that the conduct in question be known to be unlawful at the time it occurs, it must be concluded that any act which violates the provisions of a statute is malicious for purposes of dischargeability determinations.

57 B.R. 546, 548 (Bankr.N.D.Ohio 1986) (internal quotations and citations omitted).[8] In the case sub judice, the Defendant was found guilty of violating O.R.C. § 2903.11. Accordingly, as this Court will not question the validity of the Debtor's state court conviction, the Court finds that the Debtor's actions, in connection with his automobile accident with Ms. Pickens on June 20, 1996, were malicious for purposes of § 523(a)(6).

In summary, the Court finds that the Debtor is not collaterally estopped, by his state court conviction for Felonious Assault under O.R.C. § 523(a)(6), from litigating the issue of whether he acted willfully and maliciously in connection with his automobile accident with Ms. Pickens. However, based upon this Court's analysis of the interpretations given to the terms willful and malicious in § 523(a)(6), the Court finds that sufficient evidence has been presented by the Plaintiffs to make a finding that no genuine issues of material fact exist concerning whether the Debtor acted both willfully and maliciously towards Ms. Pickens with respect to the auto accident. Accordingly, even when viewing the facts in a light most favorable to the Debtor, the Plaintiffs are entitled to a judgment in their favor as a matter of law. In reaching the conclusion found herein, the

Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

**ORDERED** that the Motion for Summary Judgment of Grange Mutual Casualty Co., and Ann Pickens be, and is hereby, GRANTED.

It is **FURTHER ORDERED** that the claim of Grange Mutual Casualty Co., as subrogee, and Ann Pickens against the Defendant, Ira Lee Chapman, Jr., in the amount of Twenty-three Thousand Seven Hundred Twenty-four and 86/100 Dollars ($23,724.86), is nondischargeable.

---

8. Of course the conduct still needs to be willful. *Hoffman v. Ustaszewski,* 71 B.R. 282 (Bankr.

N.D.Ohio 1987).