In the Matter of GEORGE HUNT, INC., Debtor.

Bankruptcy No. 82–1969.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 2, 1986.

C. Kathrn Preston, Tampa, Fla., for debtor.

Jay B. Verona, St. Petersburg, Fla., for claimant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT ON OBJECTION TO CLAIM NUMBER 78

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case, and the matter under consideration is an objection to the allowance of a claim filed in this case by General Insurance Company of America, (GIC). The matter is presented by George Hunt, Inc. (Debtor) by way of a Motion for Summary Judgment. The Motion is based on the contention of the Debtor that there are no disputed material facts, and it is entitled to an Order disallowing the claim of GIC as a matter of law. The Court having considered the record established at the final evidentiary hearing and having heard argument of counsel, now finds and concludes as follows:

In January 1971 the Debtor, as general contractor, entered into a contract with Jack and Shirlee Pines (Pines) for the construction of a shopping center known as the Winter Haven Mall. On February 15, 1971, GIC, as surety, executed a performance and payment bond on the Winter Haven Mall contract, naming the Debtor as principal and the Pines as obligees under the bond. Neither bond provided for indemnification in favor of GIC by the Debtor in the case of default by the Debtor. Construction of the mall was completed by the Debtor and the premises were delivered to the Pines in September, 1971.

In April 1972, the stock of the Debtor was acquired by an entity known as Gulf Stream Atlanta Development (Gulf Stream) and as a result of which it became the parent of the Debtor, who in turn became a wholly owned subsidiary of Gulf Stream. At the time Gulf Stream acquired the stock in the Debtor, Gulf Stream was having difficulty obtaining payment and performance bonds. In order to enable Gulf Stream to carry on its construction business, after Gulf Stream became the parent, Gulf Stream acquired all its payment and performance bonds through the Debtor. Although there is no written document to this effect in the record, it further appears that Gulf Stream agreed to indemnify GIC if it had to spend any money by virtue of the payment and performance bonds that GIC issued to it or to the Debtor. The agreement appears to have applied to the payment and performance bonds issued by GIC in connection with the construction of the Winter Haven Mall project owned by the Pines.

Prior to the opening of the shopping mall in September 1971 the roof of the mall began to leak, and for a period of about one year the Debtor repaired the leaks as they were reported. The problems with the leaks continued, however, and on January 11, 1978, the Pines filed suit for damages in the Circuit Court for Polk County, Florida, naming the Debtor and GIC, among others, as Defendants.

After GIC was served with a copy of the Complaint and Summons in the Pines lawsuit, Mr. Don Reedy, a claim adjustor for GIC, wrote a letter to Mr. George Hunt in which Mr. Reedy stated "in view of your obligation to defend us and save us harmless from loss in connection with our suretyship on this project, we tender to you the defense of this action through your own counsel and at your own expense." On February 14, 1978, Mr. Timothy Peters of the lawfirm of Goza, Hall, Peacock, and Petes, P.A., counsel for the Debtor, responded to Mr. Reedy's letter and specifically agreed to the defense of GIC in the lawsuit. For the first three and a half years of this litigation, the Debtor provided a defense for GIC in this lawsuit, and paid the attorney fees and costs incurred in connection with the defense of GIC. When the lawfirm representing the Debtor dis-

banded, the Debtor changed attorneys. Its new counsel declined to continue the representation of GIC. GIC then retained its own counsel.

On May 23, 1983, pursuant to a stipulation by all of the parties except the Debtor, the Circuit Court of Polk County, Florida, entered an order of dismissal with prejudice in the Pines lawsuit, dismissing the cause of action against all the Defendants except the Debtor. The stipulation and order expressly provided that each party was to bear its own costs, and the order also provided that the dismissal did not in any way affect the claims that the parties might have against the Debtor.

On September 24, 1982, the Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code. On May 23, 1984, GIC filed an amended proof of claim in this case in the amount of $30,240 based on fees and costs incurred in connection with its defense of GIC in the Pines lawsuit. In due course the Debtor interposed an objection to the claim, alleging that the debt was never valid and enforceable against the Debtor. It is the Debtor's contention that there was never an indemnification agreement between the Debtor and GIC which would impose on the Debtor an obligation to pay the legal expenses incurred by GIC in connection with the lawsuit. The Debtor further contends that because GIC never, in fact, paid any damages to the Pines in connection with the lawsuit, GIC cannot assert a claim against the Debtor for attorneys' fees incurred in connection with defense of the Pines claim.

GIC argues that even though there was no formal indemnification agreement with the Debtor, an implied contractual relationship existed between GIC and the Debtor which imposed on the Debtor the obligation to indemnify GIC for any costs or fees incurred in connection with the Winter Haven Mall project. GIC cites several cases that hold that the obligation to indemnify does not necessarily arise out of an express contract of indemnification but may also arise out of implied contracts or out of liability imposed by law. *See, i.e., Stuart*

*v. Hertz Corp.*, 351 So.2d 703 (Fla. 1977); *Allstate Insurance Company v. Alterman Transport Lines, Inc.*, 465 F.2d 710 (5th Cir.1972); *Mims Crane Service, Inc. v. Insley Manufacturing Corp.*, 226 So.2d 836 (2d D.C.A. 1969). GIC further asserts that the attorneys' fees which are the basis of its claim are proper elements to be recovered in an indemnification action, *Perkins State Bank v. Connolly*, 632 F.2d 1306 (5th Cir.1980), and that such attorneys' fees are properly allowed as unsecured claims in bankruptcy, *In re Missionary Baptist Foundation of America*, 24 B.R. 970 (Bankr.N.D.Tex.1982).

Indemnification is defined as "a right which inures to a person who has discharged a duty which is owed by him but which, as between himself and another, should have been discharged by the other." 41 Am.Jur.2d *Indemnity* § 1 (1968). As established by the case law above, this duty to indemnify may arise out of implied contractual relations in the absence of an express contract to indemnify. It is clear that the letter from Mr. Reedy to Mr. Hunt, dated February 10, 1978, in which Mr. Reedy tendered GIC's defense to the Debtor, and the letter from Mr. Peters to Mr. Reedy, dated February 14, 1978, in which Mr. Peters accepted GIC's tender of defense, obligated the Debtor to defend GIC in the Pines lawsuit. By accepting the tender of defense, the Debtor conceded by implication that it did have a duty to indemnify GIC even without a cross-indemnity clause. Based on the foregoing, it is clear that the Debtor is estopped from denying its duty to compensate GIC for its attorneys' fees, not only because of the letter by its counsel agreeing to provide legal representation, but also by its conduct in providing said representation for three and a half years. This Court is satisfied that the Debtor had a duty to indemnify GIC for expenses incurred in connection with the Winter Haven Mall bond, and that GIC is entitled to an allowed unsecured claim in the amount of the attorneys' fees that GIC was compelled to pay when the Debtor

ceased to provide the representation it had obligated itself to provide.

 To overcome the obvious, the Debtor argues, however, that because there was an express agreement between Gulf Stream and GIC for indemnification, GIC must first seek compensation from Gulf Stream before it makes a claim against the Debtor. Even though GIC may have a right to seek compensation from Gulf Stream for the fees it now seeks to recover from the Debtor, GIC's right to recover from another party does not extinguish the Debtor's obligation to indemnify GIC.

Based on the foregoing, this Court is satisfied that the Debtor had a duty to indemnify GIC for the costs incurred in connection with the Pines lawsuit, specifically the attorneys' fees, and that GIC is entitled to an unsecured claim in the amount of $30,240.

As noted earlier, this matter is presented for this Court's consideration by a Motion for Summary Judgment filed by the Debtor. The claimant, GIC, did not file a cross motion for summary judgment. Although there is some authority that it is improper to enter a summary judgment for a nonmoving party, this Court is satisfied that if there are no genuine issues of material facts and the nonmoving party is entitled to judgment as a matter of law, the entry of a summary judgment in favor of a nonmoving party is entirely appropriate. *See, Viger v. Commercial Insurance Company of Newark, N.J.,* 707 F.2d 769 (3rd Cir. 1983). Especially when the moving party was put on notice that the controversy might be decided as a matter of law without trial. Therefore, it appears proper to deny the debtor's Motion for Summary Judgment and enter Summary Judgment in favor of the claimant, GIC.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by the Debtor be, and the same is hereby, denied, and the objection to Claim Number 78 be, and the same is hereby, overruled. It is further

ORDERED, ADJUDGED AND DECREED that summary judgment be, and the same is hereby, entered in favor of General Insurance Company of America be, and the same is hereby, allowed as an unsecured claim in the amount of $30,240.