In re Timothy **SINTOBIN** and
Sandra Sintobin, Debtors.

Dave O'Brien, Plaintiff,

v.

Timothy/Sandra Sintobin, Defendants.

No. 99–3245.

United States Bankruptcy Court,
N.D. Ohio.

Aug. 8, 2000.

Elinor T. Parish, Huron, OH, for defendants.

L. Scott Helkowski, Wauseon, OH, for plaintiff.

### DECISION AND ORDER

This cause comes before the Court after a Trial on the Plaintiff's Complaint to Determine the Dischargeability of a Debt. The Plaintiff brings his Complaint pursuant to § 523(a)(6) of the Bankruptcy Code which provides that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

In response to the Plaintiff's Complaint, the Defendants filed an Answer denying the Plaintiff's allegations, and raising certain affirmative defenses.[1] On May 2, 2000, the Court held a Trial on the Plaintiff's Complaint at which time the Parties were afforded the opportunity to present evidence in support of their respective positions. From this evidence, the Court was able to garner a picture of the events which transpired in this case.

On September 10, 1999, the Defendants in this case petitioned this Court for relief under Chapter 7 of the United States Bankruptcy Code. In their schedule of unsecured debts, the Defendants listed an obligation owing to the Plaintiff, as a result of the Plaintiff's procurement of a default judgment in the Fulton County Court against the Defendants. On December 13, 1999, the Plaintiff filed a Complaint seeking to hold this debt nondischargeable on the basis that the debt arose from the Defendants' willful and malicious conduct. The specific circumstances giving rise to this debt are as follows:

In June of 1993, the Defendants entered into a contract to lease a house from the Plaintiff. The terms of this contract, which eventually evolved into a month-to-month lease, provided that the Defendants would pay to the Plaintiff Three Hundred Twenty-five ($325.00) dollars per month for rent plus a Twenty-five ($25.00) dollar penalty for any late payments. The actual house which the Defendants rented from the Plaintiff was built in the early 1900's and was in need of extensive repairs. Thus, prior to renting the house to the Defendants, the Plaintiff did some work to the property, including: painting interior walls, adding new vinyl flooring to the bathroom, installing new counter-tops, and carpeting the interior. However, despite these repairs, it is apparent that some additional work to the premises was needed. For example, at the time the Defendants moved in, it appears that the kitchen cabinets contained in the house were in a state of disrepair. In addition, it appears that the roof on the house was in need of repair. The evidence presented in this case also shows that while the Defendants occupied the home, they experienced problems with flooding in their basement, which caused the Defendants to experience further problems with their furnace, hot water heater, and washer and dryer. In addition, the Defendants assert that this flooding necessitated the removal of several truckloads of sewage-soaked drywall and other debris.

---

1. In addition, the Defendants filed a counterclaim pursuant to 11 U.S.C. § 523(d). However, with regards to the Defendants' counterclaim, the Court must deny any relief as § 523(d) only applies to nondischargeability actions brought in accordance with 11 U.S.C. § 523(a)(2)(A).

In the spring of 1999, the Defendants were evicted from the Plaintiff's house for the nonpayment of rent. Upon reentry, extensive damage to the house was discovered, including, but not limited to: spray painted walls, destroyed cupboards, dirty carpeting, ripped up linoleum, garbage laying around, holes in walls, and doors knocked off their hinges. As a result of this damage, the Plaintiff brought an action in the Fulton County Court and, after receiving a judgment by default, was awarded Fourteen Thousand Five Hundred and 69/100 ($14,500.69) dollars in compensatory damages. Of this amount, Three Thousand Two Hundred Forty-eight and 26/100 ($3,248.26) dollars was attributable to back rent, legal expenses and penalties, while an additional Eleven Thousand Two Hundred Fifty-two and 43/100 ($11,252.43) dollars of the Judgment was attributable to actual physical damages which occurred to the Plaintiff's house. In addition, the Fulton County Court awarded the Plaintiff One Hundred Seven and 77/100 ($107.77) dollars in court costs.

With regards to some of the above damages, including the spray painted walls, the doors knocked off their hinges, and holes in the walls, it is apparent that such damages were deliberately caused by the Defendants' children and friends of the Defendants' children. Notwithstanding this fact, the evidence presented in this case shows that the Defendants never made any attempt to remedy the situation by either fixing the damages themselves or by informing the Plaintiff of the damages. In addition, the Defendants never seriously disciplined their children for causing such damages, nor did the Defendants make any real attempt to prevent any of the other children responsible for the damages from later visiting the Plaintiff's house.

In their defense, the Defendants assert that they did not fix any of the above specified damages because at one time they were negotiating with the Plaintiff to purchase the house. The Defendants also assert that during their stay at the Plaintiff's house, they made various improvements to the house. In addition, the Defendants point to the fact that much of the damage to the Plaintiff's house was either preexisting or the result of ordinary wear and tear.

With regards to the latter defense, the Court agrees that the evidence presented in this case shows that the house leased by the Plaintiff to the Defendants was, at the time it was rented (and still is), in very poor condition. Thus, given the rather poor condition of the house, the Court cannot find that, beyond ordinary wear and tear, the Defendants caused Eleven Thousand Two Hundred Fifty-two and 43/100 ($11,252.43) dollars in actual physical damage to the Plaintiff's property. Instead, based upon the evidence presented, the Court finds that the amount of physical damages sustained by the Plaintiffs's house, beyond that of ordinary wear and tear, was Three Thousand Five Hundred ($3,500.00) dollars.[2]

## LEGAL ANALYSIS

A creditor seeking to hold a debt nondischargeable under § 523(a)(6) carries the initial burden of production and the ultimate burden of persuasion to prove, by a preponderance of the evidence, that the debtor acted in both a willful and malicious manner. *Grange Mutual Casualty Co. v. Chapman (In re Chapman)*, 228 B.R. 899, 906 (Bankr.N.D.Ohio 1998) *citing Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). For purposes of § 523(a)(6), a person will be deemed to have acted willfully "when that person acts with the intent to cause injury, or is substantially certain that an injury will oc-

---

**2.** The Court does not doubt that the Plaintiff will need approximately Eleven Thousand Two Hundred Fifty-two and 43/100 ($11,-252.43) dollars to fully repair his house. However, as the house was in serious need of repair at the time the Defendants moved in, the Defendants should not be responsible for putting the house in a better condition than what it was when they moved in.

cur." [3] *In re Chapman*, 228 B.R. at 908. By comparison, malice for purposes of § 523(a)(6) is said to occur when a person acts "in conscious disregard of one's duties or without just cause or excuse." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986), *citing Tinker v. Colwell*, 193 U.S. 473, 486, 24 S.Ct. 505, 508, 48 L.Ed. 754 (1904). In accordance with these definitions, it is clear that the Defendants' children and friends of the Defendants' children acted in both a willful and malicious manner when they caused injury to the Plaintiff's property. Thus, the question now becomes whether the Defendants can, for purposes of § 523(a)(6), be held liable for such damages. Before beginning with this analysis, however, the Court observes that those damages awarded to the Plaintiff for back rent, legal expenses, penalties, and court costs, and those damages which resulted from ordinary wear and tear to the premises, do not meet the nondischargeability standard of § 523(a)(6). Consequently, the amount of debt at issue for nondischargeability purposes will be Three Thousand Five Hundred ($3,500.00) dollars.

▆ An examination of the language under § 523(a)(6) shows that the phrase "by the debtor" directly follows the phrase "for willful and malicious injury." Specifically, § 523(a)(6) provides that any debt which arises by a "willful and malicious injury by the debtor to another entity or the property of another entity" is nondischargeable in bankruptcy. Thus, under the plain meaning of § 523(a)(6), it must be the debtor who acts in both a willful and malicious manner in causing an injury to another entity or the property of another entity. *Deroche v. Miller (In re Miller)*, 196 B.R. 334, 336 (Bankr.E.D.La.

1996). As a result of this requirement, it has been universally held that a person's willful and malicious actions cannot be imputed to another person for the purpose of holding that debt nondischargeable under § 523(a)(6). *Yelton v. Eggers (In re Eggers)*, 51 B.R. 452 (Bankr.E.D.Tenn.1985); *Johnson v. Horne (In re Horne)*, 46 B.R. 814 (Bankr.N.D.Ga.1985); *Thatcher v. Austin (In re Austin)*, 36 B.R. 306 (Bankr. M.D.Tenn.1984). Moreover, this principle has been specifically applied so that willful and malicious actions undertaken by a child are not imputed to the child's parents. *In re Miller*, 196 B.R. at 337; *Jones v. Whitacre (In re Whitacre)*, 93 B.R. 584, 585 (Bankr.N.D.Ohio 1988); *Bowse v. Cornell (In re Cornell)*, 42 B.R. 860, 862 (Bankr.E.D.Wash.1984). Thus, parents who are merely negligent in supervising their children are still entitled to have any liability arising from such negligent supervision discharged in bankruptcy.

▆ Notwithstanding this principle, there is no direct requirement under § 523(a)(6) that a debtor actually be the entity which physically occasions the actual damages to the person or property. Thus, any debtor who seeks or encourages another person to commit a willful and malicious act would not, for purposes of § 523(a)(6), be entitled to have any liability arising therefrom discharged in bankruptcy. Further, the types of encouragement which may lead to a finding of nondischargeability under § 523(a)(6) can range from overt encouragement to simply an omission, if such an omission was calculated by the debtor in a willful and malicious manner to cause injury. This interpretation is in accordance with generally accepted principles of tort law,[4] which as held by

---

**3.** This definition was reached by this Court after conducting an in-depth analysis of the *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), decision in which the Supreme Court of the United States specifically addressed the willful requirement of 11 U.S.C. § 523(a)(6).

**4.** *See Guillozet v. Allied Signal, Inc.*, (Mar. 2, 1994), Darke App. No. 1333, unreported, at 4, 1994 WL 100722 (an intentional tort is an act or omission that has as its purpose the bringing about of given consequences or which proceeds from a belief that given consequences are substantially certain to result from the act).

the Supreme Court in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), underpin the § 523(a)(6) exception to discharge. In addition, such an interpretation furthers the policy goal of § 523(a)(6) which is to except from a bankruptcy discharge those debts incurred by morally reprehensible conduct. *Murray v. Wilcox (In re Wilcox)*, 229 B.R. 411, 418 n. 7 (Bankr.N.D.Ohio 1998). For example, in *In re Cornell*, the bankruptcy court, in addressing a parent's liability for the actions of her son, stated: "Analysis of the historical background of § 523(a)(6) demonstrates that where there is conduct of an exceptionally culpable nature, participated in or permitted by a responsible person, the liability resulting therefrom may not be dischargeable." *In re Cornell*, 42 B.R. at 864.

 Determining whether a debtor acted both willfully and maliciously for purposes of § 523(a)(6) necessarily requires an examination of that person's state of mind. However, as a debtor will rarely, if ever, admit to acting in a willful and malicious manner for purposes of § 523(a)(6), both requirements can be inferred through the circumstances surrounding the injury at issue. *M–R Sullivan Mfg. Co., Inc. v. Sullivan (In re Sullivan)*, 238 B.R. 230, 238 n. 15 (Bankr.D.Mass.1999) (showing of a debtor's intent must necessarily be made through circumstantial evidence for purposes of the discharge exception for willful and malicious injury); *Caldwell v. Hanes (In re Hanes)*, 214 B.R. 786, 822 (Bankr.E.D.Va.1997) (implied malice may be shown by the acts or conduct of the debtor in the context of his surrounding circumstances). Pursuant to this principle, a number of facts stand out to the Court. First, on repeated occasions, the Defendants' children and their friends flagrantly caused serious damage to the Plaintiff's home. Second, despite knowing the propensity of their children (and their friends) to commit acts of vandalism to the Plaintiff's house, the Defendants did undertake to discipline their children in a manner serious enough to deter such actions in the future. (In addition, the other children who vandalized the Plaintiff's house were still permitted by the Defendant to come to the Plaintiff's house after committing such transgressions.) Third, the Defendants, by failing to repair the damage caused to the house and by failing to notify the Plaintiff of such damages, completely disregarded their statutory duties as tenants under Ohio's Landlord–Tenant Act. *See* O.R.C. § 5321.05 (setting forth a tenant's duties under the Ohio law). Fourth, much of the damage to the Plaintiff's house seems to have occurred when the relationship between the Parties was deteriorating. Finally, the Court observes that neither one of the Defendants, while giving oral testimony, showed any remorse regarding the damages which occurred to the Plaintiff's house. In fact, both Defendants acted as if it was really not an issue that their children vandalized the Plaintiff's property.

Given these observations collectively, the Court finds that the Defendants, by their omissions, willfully and maliciously caused injury to the Plaintiff's property. In particular, the Court finds that the Defendants' complete apathy over what occurred to the Plaintiff's house both influenced and encouraged their children and their friends to commit acts of vandalism against the house, and that the end result was intended by the Defendants. Thus, based upon this finding, the Court finds that the plaintiff will hold a nondischargeable debt of Three Thousand Five Hundred ($3,500.00) dollars against the Defendant. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

***ORDERED*** the debt of the Defendants, Timothy Sintobin and Sandra Sintobin, to

the Plaintiff, Dave O'Brien, in the amount of Three Thousand Five Hundred ($3,500.00) Dollars be, and is hereby, determined to be a Nondischargeable Debt in bankruptcy pursuant to 11 U.S.C. § 523(a)(6).