ELECTRONIC CITATION:  2004 FED App. 0001P (6th Cir.)
File Name:  04b0001p.06

# BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re:  WILLIAM FARRIS TRANTHAM, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| MONSANTO COMPANY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 03-8010 |
| | ) | |
| WILLIAM FARRIS TRANTHAM, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Western District of Tennessee at Memphis.
No. 02-27859-K; Adv. No. 02-0596.

Argued:  November 10, 2003

Decided and Filed:  January 30, 2004

Before: AUG, COOK, and WHIPPLE, Bankruptcy Appellate Panel Judges.[1]

_____

## COUNSEL

**ARGUED:**  Joseph N. Mole, FRILOT, PARTRIDGE, KOHNKE & CLEMENTS, New Orleans, Louisiana, for Appellant.  P. Preston Wilson, GOTTEN, WILSON, SAVORY & BEARD, Memphis, Tennessee, for Appellee. **ON BRIEF:**  Joseph N. Mole, Michael H. Pinkerton, Miles P. Clements, FRILOT, PARTRIDGE, KOHNKE & CLEMENTS, New Orleans, Louisiana, for Appellant.  P. Preston Wilson, GOTTEN, WILSON, SAVORY & BEARD, Memphis, Tennessee, for Appellee.

_____

[1]The Honorable Mary Ann Whipple was substituted on the panel for William T. Bodoh, who retired from the bench as of January 2, 2004.

_____

**OPINION**

_____

J. VINCENT AUG, JR., Bankruptcy Appellate Panel Judge. Monsanto Company (Monsanto) appeals the bankruptcy court's memorandum and order denying its motion for summary judgment on its complaint for nondischargeability of Monsanto's claim against the Debtor, William Farris Trantham (Trantham). The bankruptcy court determined that the pre-petition patent infringement judgment obtained by Monsanto against Trantham in the amount of $592,677.89 is dischargeable.

## I. ISSUES ON APPEAL

1.      Whether the bankruptcy court applied the wrong standard for a finding of "willful and malicious injury" under 11 U.S.C. § 523(a)(6).

2.      Whether the debt for willful patent infringement is dischargeable.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Western District of Tennessee has authorized appeals to the BAP. A "final order" of a bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). The bankruptcy court's order denying Monsanto's motion for summary judgment and finding, based on the collateral estoppel effect of the district court's decisions, that Trantham's debt to Monsanto was dischargeable is a final order.

Orders denying motions for summary judgment are reviewed for abuse of discretion. *Romstadt v. Allstate Ins.* Co., 59 F.3d 608 (6th Cir. 1995). "'An abuse of discretion occurs only when the [bankruptcy] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard.'" *Sicherman v. Diamoncut, Inc. (In re Sol Bergman Estate Jewelers, Inc.)*, 225 B.R. 896, 899 (B.A.P. 6th Cir. 1998)

(alteration in original) (quoting *Mapother & Mapother, P.S.C. v. Cooper* (*In re Downs*), 103 F.3d 472, 480-81 (6th Cir. 1996)).

The application of collateral estoppel is reviewed de novo. *See Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 461 (6th Cir.1999). "De novo review requires the Panel to review questions of law independent of the bankruptcy court's determination." *First Union Mortgage Corp. v. Eubanks (In re Eubanks)*, 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998) (citation omitted). "When reviewing a summary judgment decision, an appellate court must confine its review to the evidence as submitted to the district court." *Markowitz*, 190 F.3d at 463.

## III.   FACTS

Before delving into Monsanto's issues on appeal, it is necessary to review the facts giving rise to the patent infringement judgment which Monsanto asserts is nondischargeable. In its decision finding that Trantham had infringed Monsanto's patents, the U. S. District Court for the Western District of Tennessee gives a succinct version of these background facts. The court states:

> This case stems from [Monsanto's] patents on technology that allows a seed producer of cottonseed and soybean seeds to insert genes into the seed to make the resulting plants resistant to glysophate herbicides, such as Roundup herbicide, a product manufactured by [Monsanto]. Seeds with the patented technology are called Roundup Ready®. A grower using the Roundup Ready® seed can spray his crops with the Roundup herbicide, or another glysophate herbicide, thereby killing the weeds in his field without damaging his crops. The technology can also be injected into cottonseed to make the resulting cotton plants insect repellant. Cottonseed using the technology is called Bollgard® Cotton. Cottonseed containing both versions of the technology is called Bollgard® with Roundup Ready® Cotton. [Monsanto's] Roundup Ready® and Bollgard® gene technology is protected by three patents, which were issued prior to the events giving rise to this controversy. [Monsanto] sells the gene technology to seed producers under a license to use the technology in the production of cottonseed and soybeans. The seed producers then sell the seed treated with the technology to retailers or to growers, both of whom must obtain licenses from [Monsanto] before selling or using the seeds with the Roundup Ready® or Bollgard® technology. . . .
>
> In order for an individual farmer to use seed produced with the patented gene technology, the farmer must be licensed to use the product. Under the licensing arrangement, a grower is only allowed to use the

technology in one growing season and is prohibited from saving for later planting any of the seed produced from plants grown using the purchased seed. The grower is also prohibited from selling saved seed or transferring the seed to anyone else for planting.

. . .

[Trantham] is a farmer in Tipton County, Tennessee. [Trantham] has never obtained a license from [Monsanto] to use its technology in cottonseed. In 1999, [Trantham] purchased, along with James Wood, approximately 900 bushels of cottonseed from the Burlison Gin, located near Covington, Tennessee. [Trantham] then used that seed to plant over 100 acres of land with cotton seed. [Trantham] applied Roundup herbicide over the cotton, some of which was killed. In 2000, [Trantham] used seed purchased from the Burlison Gin to plant his cotton crops and again applied Roundup herbicide to the crop.

[Trantham] also purchased soybeans in 1999 from a retailer named Terra Seed and Chemical Company. [Trantham] planted and harvested the soybeans in 1999, and then planted his 2000 crop with soybeans saved from the previous year's harvest.

[Monsanto] was granted leave by this Court to enter [Trantham's] land to collect samples of the cotton and soybean crops to be tested for the presence of the Roundup Ready® and Bollgard® gene technology. [Monsanto] used three separate testing procedures on the cotton and soybean crops, and detected [Monstanto's] patented gene technology in 93% of the cotton samples and 100% of the soybean samples.

*Monsanto Co. v. Trantham*, 156 F. Supp. 2d 855, 858-59 (W.D. Tenn. 2001). Subsequent to the district court's summary judgment that Trantham had in fact infringed Monsanto's patent, a separate jury trial was held to determine Monsanto's damages. The jury found by clear and convincing evidence that Trantham had willfully infringed Monsanto's patents and awarded damages of $34,392. Trantham filed a brief in opposition to the jury's finding of willfulness and Monsanto filed a Motion for Judgment as a Matter of Law, asserting that the amount of the jury's award as to a reasonable cottonseed royalty was inadequate and not supported by the evidence.

The district court declined to set aside the jury's finding of willfulness. The court stated that "[t]here is more than ample evidence to support the jury determination that Trantham acted willfully in infringing Monsanto's patents. In fact, Trantham admitted at trial that he simply could not or did not want to pay the price that Monsanto charged."

On the other hand, the district court agreed with Monsanto that the amount of the verdict was not supported by the evidence and, with the encouragement of the district court, the parties agreed that the compensatory damages with respect to the cottonseed technology were $87,022.50.

Monstanto also filed a post-trial memorandum in the district court requesting additional relief in the form of treble damages, attorney fees and expert witness fees. In analyzing whether Monsanto was entitled to treble damages, the district court considered: (1) whether the infringer deliberately copied the idea or design of another; (2) whether the infringer had a good faith belief that the patent was invalid; (3) the infringer's behavior as a party to the litigation; (4) the infringer's size and financial condition; (5) the closeness of the case; (6) the duration of the infringer's misconduct; (7) any remedial action taken by the infringer; (8) the infringer's motivation for harm; and (9) whether the infringer attempted to conceal his misconduct.

In reviewing these factors and deciding that enhancement of damages was appropriate, the district court noted that (i) "Trantham admitted that he infringed simply to avoid paying the license fee;" (ii) the infringement issue was decided on summary judgment; and therefore, the issue of Trantham's willfulness was not a close one in the case; (iii) Trantham took no remedial action; (iv) the deception was carried out over a period of two years; and (v) there was evidence that Trantham sought to conceal his infringement by sending cottonseed to be delinted under a false name.

The court concluded that it was appropriate to award treble damages, even though it found with respect to item (8) above (motivation), that "[t]here is no evidence that Trantham was motivated by an intent to harm Monsanto."

In deciding that it was also appropriate to award 50% of Monsanto's attorney fees in the case, the district court stated:

> In this case, the Court concludes that an award of attorneys' fees is appropriate. Trantham deliberately used Monsanto's patented technology without obtaining a license and without paying for it. In addition, he undertook to conceal his infringement. Trantham admitted at trial that his sole motivation was to avoid paying for a license and abiding by its terms. The policy behind [35 U.S.C.] § 285 of discouraging infringement is well-served by awarding attorneys' fees under these circumstances.

Finally, the district court determined that Monsanto was not entitled to its expert witness fees in excess of the statutory limit set forth in 28 U.S.C. § 1821(b). In making this

decision, the district court noted that before such an award could be made, the court must make a finding of "fraud, abuse of the judicial process or something tantamount to the very temple of justice (being) denied." The district court found that "there has been neither fraud, abuse of judicial process, or any other gross injustice perpetrated by Trantham. This case does not qualify as the kind of 'very exceptional' case which would warrant the award of additional expert fees."

The final judgment was entered by the district court on May 14, 2002, against Trantham in the amount of $592,677.89.[2] Trantham did not appeal that judgment.

On May 10, 2002, Trantham filed his chapter 7 petition. Monsanto filed a timely complaint objecting to the discharge of its patent infringement judgment pursuant to 11 U.S.C. § 523(a)(6). Monsanto also filed a motion for summary judgment asserting that, based on the collateral estoppel effect of the district court's prior decisions, it was entitled to have its judgment determined nondischargeable. Monsanto argued that (i) the district court jury had already decided that Trantham intentionally infringed Monsanto's patent; (ii) Trantham knew that his intentional acts would harm Monsanto because Trantham utilized Monsanto's technology without paying the required fees; and (iii) Trantham admitted that he could not or did not want to pay the price Monsanto charged. Monsanto also pointed out that the district court jury and judicial findings of willfulness coupled with an award of treble damages and attorney fees, showed that an intentional tort had occurred and justified a finding that Monsanto's prepetition patent infringement judgment was nondischargeable under § 523(a)(6).

In response to Monsanto's motion for summary judgment, Trantham argued that the district court did not make a finding that Trantham acted with malice and that the doctrine of collateral estoppel is, therefore, not applicable. He requested a separate hearing on the sole issue of malice. Alternatively, he argued that the bankruptcy court should give collateral estoppel effect to the district court's findings that there was no evidence that

---

[2]The judgment was composed of compensatory damages of $106,132.50 trebled to $318,397.50; prejudgment interest of $9,005.27 and Monsanto's attorney fees of $265,275.12.

Trantham was motivated by an intent to harm Monsanto and no evidence of fraud or any other gross injustice on Trantham's part.[3]

The bankruptcy court found that the issue of willfulness was determined by the district court proceeding and that Trantham basically conceded that issue. The bankruptcy court also stated that, in its opinion, "the meaning of the two words (i.e., 'willful' and 'malicious') were intended by the Congress to be treated differently and possess entirely separate and distinct legal significance under section 523(a)(6)." Applying *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999), the bankruptcy court found that it was required "to determine whether the debtor subjectively desired to intend the harm or had knowledge that harm is substantially certain to occur or result from the debtor's actions."

In determining that the prepetition patent infringement judgment was dischargeable, the bankruptcy court noted that Trantham asserts that his subjective intent was not to harm Monsanto but rather to produce an efficient and profitable crop to save his farm. It also stated that the district court's findings i.e., that Trantham was not motivated by an intent to harm Monsanto and that there was no evidence that Trantham committed fraud, abuse of the judicial process or other gross injustice, played a significant role in its determination that Monsanto had not met its burden of showing a willful and malicious injury under § 523(a)(6). Monsanto filed this timely appeal.

## IV.  DISCUSSION

Summary Judgment Standard

Bankruptcy Rule 7056 governs summary judgment in adversary proceedings. The bankruptcy court denied Monsanto's motion for summary judgment. Trantham had not filed a cross motion for summary judgment. However, the bankruptcy court went on to find that Trantham's debt owed to Monsanto was dischargeable, in effect making a summary judgment ruling in favor of Trantham. *See In re Hunt*, 65 B.R. 627 (Bankr. M.D. Fla. 1986) (holding it appropriate for the court to enter summary judgment in favor of the nonmoving

---

[3]In this appeal both of the parties are in agreement that the doctrine of collateral estoppel applies in this case with respect to the district court decisions and each party argues that those district court decisions support the party's respective position in this case.

party if the court determines that there are no genuine issues of material fact and nonmoving party is entitled to judgment as a matter of law); *see also* Fed. R. Civ. P. 56; Fed. R. Bankr. P. 7056. According to the Sixth Circuit,

> A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Under this test, the moving party may discharge its burden by "pointing out to the [bankruptcy] court ... that there is an absence of evidence to support the nonmoving party's case." The nonmoving party cannot rest on its pleadings, but must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial. Although we must draw all inferences in favor of the nonmoving party, it must present significant and probative evidence in support of its complaint. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."

*Gibson v. Gibson (In re Gibson)*, 219 B.R. 195, 198 (B.A.P. 6th Cir. 1998) (alterations in original) (quoting *Hall v. Tollett*, 128 F.3d 418, 421-22 (6th Cir.1997) (internal citations omitted)). As noted below, collateral estoppel required the bankruptcy court to apply the district court's findings of fact.

Collateral Estoppel

The Supreme Court has held that the doctrine of collateral estoppel is applicable in dischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 284 n.11, 111 S. Ct. 654, 658 (1991). Federal common law governs the claim-preclusive effect of all federal court judgments. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507-8, 121 S. Ct. 1021, 1027-28 (2001). While the federal rule applied to federal judgments in diversity cases generally requires the application of the issue preclusion rules of the state in which the federal diversity court sits, federal issue preclusion law applies to federal judgments in federal question cases. *See id.* The issue of willful infringement of Monsanto's patent presented a federal question in the district court. Thus, this court must apply federal issue preclusion law as follows:

> The Sixth Circuit has addressed a federal rule of issue preclusion, requiring "that the precise issue in the latter proceedings have been raised in the prior proceeding, that the issue was actually litigated, and that the determination was necessary to the outcome." *Spilman v. Harley*, 656 F. 2d

224, 228 (6th Cir. 1981), *overruled on other grounds, Bay Area Factors v. Calvert (In re Calvert)*, 105 F. 3d 315, 319 (6th Cir. 1997). That court observed that mutuality of parties "is no longer necessary in some circumstances." *Id.*

*Gonzalez v. Moffitt (In re Moffitt)*, 252 B.R. 916, 921 (B.A.P. 6th Cir. 2000).

We agree with the bankruptcy court's determination that the issue of "willfulness was actually raised, litigated, and determined because adjudication of the willfulness issue was necessary to the outcome of the patent infringement action." And for the reasons that follow, we conclude that it was appropriate for the bankruptcy court to give the district court's decisions collateral estoppel effect on the issue of whether Trantham's debt to Monsanto was the result of a willful *injury* as defined under 11 U.S.C. § 523(a)(6) by the Sixth Circuit. We further conclude that the findings made by the district court or by the jury in that case also support a finding of a "malicious" injury under 11 U.S.C. § 523(a)(6).

Section 523(a)(6) Analysis:

The discharge exceptions are to be narrowly construed in favor of the debtor. *Meyers v. I.R.S. (In re Meyers)*, 196 F.3d 622 (6th Cir. 1999). The party seeking the exception to discharge bears the burden of proof by a preponderance of the evidence. *Grogan*, 498 U.S. at 286.

The Bankruptcy Code provides that an individual debtor is not discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). "From the plain language of the statute, the judgment must be for an injury that is both willful and malicious. The absence of one creates a dischargeable debt." *Markowitz*, 190 F.3d at 463.

In *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 977 (1998), the Supreme Court held that finding nondischargeability of a debt under § 523(a)(6) "takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. *Geiger*, 523 U.S. at 61. The Supreme Court further stated that

> the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences of an act,*" not simply, "*the act itself.*"

*Geiger*, 523 U.S. at 61-62 (alteration in original) (citing Restatement (Second) of Torts § 8A cmt. a (1964)). The Supreme Court also stated that its prior decision in *McIntyre v.*

*Kavanaugh*, 242 U.S. 138, 37 S. Ct. 38 (1916) was in accord with its construction of § 523(a)(6) as set forth in *Geiger*. In *McIntyre*, the Court found that a broker had "deprive[d] another of his property forever by deliberately disposing of it without semblance of authority." *Id.* at 141. "The Court held that this act constituted an intentional injury to property of another, bringing it within the discharge exception." *Geiger*, 523 U.S. at 63.

In analyzing § 523(a)(6) after *Geiger*, the Sixth Circuit states:

> [T]he [Supreme] Court's citation to the Restatement's definition of "intentional torts" underscores the close relationship between the Restatement's definition of those torts and the definition of "willful and malicious injury." The Restatement defines intentional torts as those motivated by a desire to inflict injury or those substantially certain to result in injury. Although the Supreme Court identified a logical association between intentional torts and the requirements of § 523(a)(6), it neither expressly adopted nor quoted that portion of the Restatement discussing "substantially certain" consequences. Nonetheless, *from the Court's language and analysis in Geiger, we now hold that unless "the actor desires to cause the consequences of his act, . . . or believes that the consequences are substantially certain to result from it," he has not committed a "willful and malicious injury" as defined under § 523(a)(6).*

*Markowitz*, 190 F.3d at 464 (citations omitted) (emphasis added). We are bound by the Sixth Circuit's interpretation and exposition of *Geiger*, and so the bankruptcy courts in this circuit, in order to find a "willful" injury under § 523(a)(6), must determine either that (i) the actor desired to cause the consequences of the act or (ii) the actor believed that the given consequences of his act were substantially certain to result from the act. *Markowitz*, 190 F.3d at 464.

The bankruptcy court correctly stated the test to determine "willful" injury for purposes of nondischargeability under § 523(a)(6) in the Sixth Circuit based on *Markowitz*. However, it halted its analysis after its determination that Trantham did not desire to cause the consequences of his act and thus failed to consider the second prong of the *Markowitz* test: Whether Trantham believed that the consequences of his act were substantially certain to result. Those consequences were the financial harm caused to Monsanto. Where Trantham's stated purpose in willfully infringing Monsanto's patents was not to pay Monsanto for its technology, what else could Trantham believe would be the consequences of his act but that Monsanto would be deprived of money to which it was entitled?

The findings of the district court were applied in bankruptcy court via collateral estoppel. The district court found, inter alia, (1) that Trantham had admitted that his

infringement was solely for the purpose of avoiding the payment of the license fee to Monsanto (i.e., enriching himself), and (2) that there was some evidence that Trantham tried to conceal his infringement by using a false name. Thus Trantham must have known, and therefore believed, that economic damage to Monsanto was substantially certain to result from his failure to pay the license fee because he was in a zero-sum situation. He could only gain if Monsanto lost. Trantham's efforts at concealment show that he believed Monsanto was damaged and had good cause to pursue him if the damage came to light.

It is true that the district court also found that there was no evidence to suggest Trantham was specifically motivated by an intent to injure Monsanto. However, that finding is not particularly relevant when reviewing the second part of the test because the same can be said of almost any intentional tortfeasor, for example, a bank robber. His chief motive is to enrich himself, not financially injure the bank. The injury, however, is bound to occur, and in civil terms it constitutes an intentional tort against the bank.

As the Supreme Court pointed out in *Geiger*, the "willful and malicious" standard in § 523(a)(6) brings to the legal mind the idea of an intentional tort. That is how patent infringement has historically been viewed. "Infringement, whether direct or contributory, is essentially a tort, and implies invasion of some right of the patentee." *Carbice Corp. v. Am. Patents Dev. Corp.,* 283 U.S. 27, 33, 51 S. Ct. 334, 336 (1931). The patent infringement statute that authorized the recovery of damages stated that they "may be recovered by action on the case," 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2312 (2d ed. 1994), and the proper action for infringement under the patent laws was trespass on the case. *Moore v. Marsh*, 74 U.S. 515, 520 (1868); *Agawam Co. v. Jordan,* 74 U.S. 583, 593 (1868); *Myers v. Cunningham*, 44 F. 346, 349 (Ohio C.C. 1890) ("[A]ctions of trespass on the case were first prescribed by congress for patent suits in 1790, and . . . the law has never since been changed in that particular."); *Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137, 1141 (7th Cir. 1975) ("Infringement of a patent is a tort."); *Graham Eng'g Corp. v. Kemp Prods. Ltd.,* 418 F. Supp. 915, 919 (N.D. Ohio 1976). Because the district court in this case found Trantham's actions were willful, those actions constitute an intentional tort which, according to *Geiger*, could lead to nondischargeability under § 523(a)(6).

In a substantially similar case, also involving a Monsanto prepetition patent infringement judgment, the U.S. Bankruptcy Court for the Western District of Louisiana

found that the judgment owed by the farmer/debtor to Monsanto was nondischargeable under § 523(a)(6). *Monsanto Co. v. Thomason (In re Thomason)*, Ch. 11 Case No. 00-31755, Adv. No. 01-3012, slip op. (Bankr. W.D. La. Apr. 4, 2003). In *Thomason*, the district court also found that there was no evidence that the debtor intended any harm toward Monsanto. However, in finding the debt nondischargeable, the bankruptcy court stated:

> The district court also observed that the defendants "deliberately and with forethought hatched and carried out a plan to appropriate plaintiffs' patented and certificated technology for their own use." Debtor's reliance on the trial court's comment that no harm was intended toward Monsanto . . . "other than deprivation of the companies' rightful royalties and profits" is misplaced, since when read in context, the comment merely identifies the only possible injury that could have been intended, i.e., pecuniary injury. That the willfulness determination was a part of the judgment in the prior action is beyond peradventure.

*Thomason*, slip op. at 8.

Although it is unreported, we find the decision of the bankruptcy court in *Thomason* to be persuasive. In the case at bar, as in *Thomason*, the Debtor carried out his plan to appropriate Monsanto's technology without any intention of paying Monsanto for it. In addition, Trantham attempted to conceal his efforts. In effect, Trantham was planning to permanently deprive Monsanto of its property (its license fees) without the semblance of authority (the license agreement) to use the patent technology. *See McIntyre*, 242 U.S. at 141.

While the bankruptcy court correctly applied collateral estoppel to the issue of a "willful" injury, we conclude that the findings of the district court also require a determination that Trantham's debt was the result of a "malicious" injury. Under § 523(a)(6), "'[m]alicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986). The district court's findings that Trantham "deliberately" infringed Monsanto's patent for the sole purpose of avoiding payment of the license fee and then undertook to conceal his actions is also tantamount to a finding that Trantham acted in conscious disregard of his known duty to Monsanto with respect to the patent.

## V.  CONCLUSION

Trantham must have believed that the consequences of his refusal to pay the license fee would be financial injury to Monsanto because, in the zero-sum situation inherent wherever something is reserved to the use of a particular entity, Trantham could only profit if Monsanto lost its reservation without proper compensation, i.e., the gain he sought could come only at Monsanto's expense.  Thus, the *Markowitz* standard of "willful" injury is met.  In addition, because Trantham acted in conscious disregard of his duty to Monsanto, the requirement of a "malicious" injury is also met.  *See Markowitz*, 190 F.3d at 463 (holding the absence of either the willful or malicious requirement from § 523(a)(6) creates a dischargeable debt).

Moreover, patent infringement, being the invasion of a protected interest, is a tort. Here, according to the district court's finding of willfulness, it was an intentional tort.  Since the Supreme Court observed that § 523(a)(6) was probably focused on intentional torts, Trantham's infringement in this case would pass muster under *Geiger* and *McIntyre* as well as *Markowitz*.

The decision of the bankruptcy court is **REVERSED**.  Monsanto's entire judgment for willful patent infringement in the amount of $592,677.89 is nondischargeable.  *See Cohen v. De La Cruz*, 523 U.S. 213, 118 S. Ct. 1212 (1998) (finding that bankruptcy law prevented the discharge of all liability arising from fraud, including actual and treble damages); *Spring Works, Inc. v. Sarff (In re Sarff)*, 242 B.R. 620, 627 (B.A.P. 6th Cir. 2000) (recognizing no distinction between compensatory and punitive damages).