In re Kimberly WILLIAMS, Debtor

Tiffany Square Family, et al., Plaintiff,

v.

Kimberly Williams, Defendant.

No. 05–3405.

United States Bankruptcy Court,
N.D. Ohio.

Aug. 8, 2006.

Benjamin Alli, Grosse Pointe, MI.

Tiffany Square Family L.P., Grosse Pointe, MI.

Kimberly G Williams, Toledo.

Stephen D Long, Toledo.

### DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court on Plaintiff–Creditor's self-titled "Motion of Objection to Discharge of Debtor's Debt." (Doc. No. 1). Both Parties filed briefs regarding their respective positions, which the Court has taken the opportunity to review fully. On June 12, 2006, a Trial was held at which the Parties were afforded the opportunity to present evidence and to make arguments in support of their respective positions. Based on the positions taken by the Parties at Trial, it was determined that Creditor's Motion was actually a Complaint to Determine the Dischargeability of Debt. At the conclusion of the Trial, the matter was taken under advisement in order to give the Court a complete opportunity to consider the issues raised by the Parties. Having taken this opportunity, the Court finds that, to the extent set forth herein, the debt is Dischargeable.

### FACTS

In May of 2005, the Debtor, Kimberly G. Williams (hereinafter "Debtor"), signed a one-year lease agreement with Plaintiff–Creditor (hereinafter "Creditor") for an apartment located at Tiffany Square Apartments in Toledo, Ohio. After Debtor failed to make the $425.00 a month rental payment as agreed for the month of July, Creditor initiated a state action to regain possession of the apartment. (Doc. No. 1). Creditor was granted possession by court order on August 18, 2005, when judgment was rendered in its favor. *Id.*

On August 25, 2005, Debtor filed for Chapter 7 Bankruptcy protection. She listed Creditor as the holder of an unsecured claim of $1,193.00 for past due rent. Creditor filed the instant Complaint to Determine the Dischargeability of Debt (hereinafter "Complaint") on November 10, 2005. (Doc. No. 1).[1] Creditor alleges that once Debtor was told of the eviction, "[D]ebtor and her son, out of control, started to wilfully [sic] and maliciously destroyed [sic] or injured [sic] the Creditor's premises" resulting in "Broken windows and Doors, desication [sic] and other damages to revenge or retaliate." (Doc. No. 1, at pg. 3).

In the Complaint, Creditor claimed $12,000.00 in total damages owed. (Doc. No. 37, at pg. 15). At Trial, however, the Creditor, without objection by Debtor, revised this figure downward to make the amount in controversy only $5,388.00. This amount includes past due rent of $1,193.00 for the months of July and August, 2005, along with late fees and court costs up to the date of filing. Also, included is $120.00 for the repair cost of a window broken by Debtor's son. Finally, the $5,388.00 includes various alleged damages to the carpet, stove, toilet and other "vandalism [and] destruction of property," totaling $4,075.00. (Pl.Ex. 6).

### DISCUSSION

Creditor, in the Complaint, seeks to have this Court declare past-due rents as well as certain alleged damages to be non-dischargeable. (Doc. No. 1, at pg. 2). An action such as this, to determine the dischargeability of a particular debt, is a core proceeding over which this Court has ju-

1. The Court acknowledges Creditor's Motion for Partial Summary Judgment, (Doc. No. 17), but finds that any issues raised in that Motion were resolved in the Trial. As a result, that Motion is not being addressed in this Decision.

risdiction to enter final orders and judgments. 28 U.S.C. § 157(b)(2)(I).

Creditor stated in the Complaint that its claim rested on various sections of the Bankruptcy Code.[2] However, at the start of the Trial it was determined the sole basis for Creditor's claim rested on § 523(a)(6). In pertinent part, this section states that a debt arising from "willful and malicious injury by the debtor to the property of another entity" is excepted from discharge. 11 U.S.C. § 523(a)(6).

■ Similar to other exceptions to discharge, "it is the movant's burden to establish, by at least a preponderance of the evidence, the applicability of § 523(a)(6)." *Superior Metal Prods. v. Martin (In re Martin)*, 321 B.R. 437, 440 (Bankr. N.D.Ohio 2004) (internal citations omitted). In addition, such "discharge exceptions are to be narrowly construed in favor of the debtor," *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 306 (6th Cir. BAP 2004), *citing Meyers v. I.R.S. (In re Meyers)*, 196 F.3d 622, 624 (6th Cir.1999). Moreover, "[t]he willful and malicious standard is a stringent one." *CMEA Title Agency, Inc. v. Little (In re Little)*, 335 B.R. 376, 383 (Bankr.N.D.Ohio 2005).

When applying § 523(a)(6), "in a great majority of cases, the same factual events that give rise to a finding of 'willful' conduct, will likewise be indicative as to whether the debtor acted with malice." *In re Martin*, 321 B.R. at 442. However, it is established that "the terms 'willful' and 'malicious' are separate and distinct concepts, and as a result, both requirements, as defined by federal law, must be established in order to have a debt held nondischargeable." *Graffice v. Grim (In re Grim)*, 293 B.R. 156, 167 (Bankr.N.D.Ohio 2003).

The Supreme Court has held that a 'willful' injury "takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998) (emphasis in original). After an in-depth analysis of Geiger, this Court held "that a person will be deemed to have acted willfully, for purposes of denying that person's discharge in bankruptcy under § 523(a)(6), when that person acts with the intent to cause injury, or is substantially certain that injury will occur." *Grange Mut. Cas. Co. v. Chapman (In re Chapman)*, 228 B.R. 899, 908 (Bankr.N.D.Ohio 1998). On the other hand, "malice for purposes of § 523(a)(6) is said to occur when a person acts in conscious disregard of one's duties or without just cause or excuse." *O'Brien v. Sintobin (In re Sintobin)*, 253 B.R. 826, 830 (Bankr.N.D.Ohio 2000). However, to act maliciously "does not require ill will or specific intent." *In re Trantham*, 304 B.R. at 308.

In applying this legal standard, the Court, for ease of analysis, has divided the $5,388.00 into three categories of debt: (1) $1,193.00, past due rent; (2) $120.00, window repairs; and (3) $4,075.00 for additional damage to the apartment. Regarding the first category, there is no dispute by either Party that Debtor failed to comply with the obligation under the lease agreement to pay rent. But, standing alone and without 'something more"—i.e., evidence of 'willful' or 'malicious' conduct— the failure to pay rent is simply a breach of contract. However, "[i]t is well settled that a simple breach of contract is not the type of injury addressed by § 523(a)(6)." *Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir.1992) (internal citations omit-

---

**2.** Specifically, Creditor listed 11 U.S.C. §§ 727, 1141, 1128(a) and (b) in addition to § 523. (Doc. No. 37, pg.3). As the nature of the Complaint is to determine the dischargeability of a specific debt, the Court's analysis is limited to § 523(a)(6).

ted); *see also In re Sintobin,* 253 B.R. at 830.

■ Under this standard, Creditor's evidence fails to show the 'something more' necessary to raise this simple breach of contract to the level of 'willful' and 'malicious' conduct. Creditor attempted to establish, with nothing more than conclusory statements, that Debtor's actions were enough to meet these standards. But to the contrary, Creditor's evidence tended to show that Debtor had a reason other than 'willful' or 'malicious' intent for her breach of contract. An example, the Debtor needed to make repairs to her car resulting from vandalism. (Doc. No. 1, at pg. 8). Thus, Creditor's evidence regarding the past due rent, being confined to showing no more than a breach of contract, does not rise to the 'willful' and malicious' standard of § 523(a)(6).

■ Addressing category two, the $120.00 for window repair, the facts show it was Debtor's son who broke the window. Generally, it is the debtor who must act in a 'willful' and 'malicious' manner and actions of others cannot be imputed to the debtor. *In re Sintobin,* 253 B.R. at 830. However, a debtor that encourages another to commit "a willful and malicious act would not ... be entitled to have any liability arising therefrom discharged in bankruptcy." *Id.* Such encouragement "can range from overt encouragement to simply an omission, if such an omission was calculated by the debtor in a willful and malicious manner to cause injury." *Id.* For example, the defendant-debtor's children in *In re Sintobin* repeatedly caused serious damage to the plaintiff-landlord's property and had a known propensity for vandalism which the defendants did not constrain or deter. *Id.* at 831.

■ Here, however, the facts show only one instance of damage and no encouragement by the Debtor. Also, Creditor introduced evidence which indicated Debtor acknowledged the broken window and was willing to make reparations to Creditor. (Pl.Ex. 2). Together, these actions are hardly indicative of Debtor's intent to act with ill will or spite. Therefore, this Court finds the $120.00 debt for the broken window did not arise as the result of 'willful' and 'malicious' conduct and is dischargeable.

■ The Court now turns to the remaining category: the alleged 'willful' and 'malicious' damages to the apartment totaling $4,075.00. As discussed above, "in order to find a 'willful' injury under § 523(a)(6), [this Court] must determine either that (i) the [Debtor] desired to cause the consequences of the act or (ii) [Debtor] believed that the given consequences of [her] act were substantially certain to result from the act." *In re Trantham,* 304 B.R. at 307, *citing Markowitz v. Campbell (In re Markowitz),* 190 F.3d 455, 464 (6th Cir.1999). In order to find a 'malicious' injury, this Court must determine if Debtor consciously disregarded any duty to Creditor without just cause or excuse. If a court finds either element is absent, the debt is dischargeable. *In re Markowitz,* 190 F.3d at 463.

In support of its position, Creditor relied primarily on two documents along with conclusory allegations as to its perceived intent of Debtor. Regarding the documents, one is an affidavit by an employee of Creditor which describes, in pertinent part, the types of damage found and items repaired in the apartment along with a single reference that the conditions inside were "deplorable." (Pl.Ex. 9). The other document is an itemized list of charges for damages purportedly found during an inspection which took place on September 8, 2005. (Pl.Ex. 6).

■ In evaluating the documents, the Court can not give either much evidentiary

weight. First, since the affidavit was given by an employee of the Creditor, its characterization of "deplorable" is prone to bias. Going a step further, the affiant was not available at Trial for the Court or opposing counsel to cross-examine in order to ascertain either the person's credibility or the reliability of their statement. In addition, the handwritten list of charges is very confusing to decipher and essentially shows nothing except the cost of the repairs. The accusations contained therein thus do not provide much weight for showing that the Debtor had any desire to injure or knowledge that injury was substantially certain to occur.

Further, Debtor denied the characterization given in these documents. She testified, and Creditor did not deny, that the apartment "was not in the best condition" at the start of the lease. For example, she had to ask the property manager to tape down portions of the carpet that were curling up. Additionally, she swept and cleaned the apartment prior to vacating and stated the apartment was left in a condition that was "not unlivable." In her view, the damages described by Creditor are more indicative of normal 'wear and tear' and not the result of any 'willful' or 'malicious' retaliatory conduct on her part. Therefore, taken together, these documents are very weak and the Court will not afford them any substantial weight.

In addition to the offered documentary evidence, Creditor made several conclusory statements that the actions of Debtor were 'willful.' Three examples are: Debtor intentionally "stopped up the toilet" using small toys in order to cause it overflow; Debtor intentionally damaged the carpet by allowing a dog to urinate and defecate on the carpet; and Debtor intentionally removed the entry door in order to grant access for reprisal vandalism.[3]

But in response to the above allegations, Debtor presented viable explanations. She rebutted the first with testimony that the toilet worked properly when she moved out of the apartment. Regarding the second allegation, Debtor testified that the dog which messed on the carpet was not hers but a neighbor's who was over to use the phone. Debtor explained she cleaned up the mess immediately in order to prevent any permanent damage. Finally, while Debtor admitted to taking the door off, she made it clear that the reason for doing so was to facilitate moving her belongings out. While the failure to reinstall the door appears to be negligence on her part, "debts arising from ... negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Geiger*, 523 U.S. at 64, 118 S.Ct. 974. Presented with conflicting testimony comprised of conclusory statements by Creditor balanced against facially viable explanations by Debtor, this Court—as a matter of law—must construe the discharge exceptions in favor of the Debtor. *In re Trantham*, 304 B.R. at 306. As a result, the evidence offered does not support a finding of 'willful' intent.

Other courts, when faced with similar issues involving damages to leased property, relied on additional corroborating evidence in finding 'willful' and 'malicious' injury. One court found that the introduction of 11 photographs showing damage to various rooms along with testimony by a city building inspector as to the causes of the damage provided sufficient evidence to prove the existence of 'willful,' as well as 'malicious,' damage. *Realty Invs. v. Gres-*

---

**3.** Debtor testified that unidentified persons had vandalized her car. Creditor suggested this vandalism was perhaps in retaliation for previous vandalism by her son to their cars.

Yet, as with the other allegations, no supporting evidence was offered from which the Court could substantiate this suggestion.

so *(In re Gresso)*, 115 B.R. 628, 630–31 (Bankr.N.D.Ind.1990). Another court "[gave] extra weight to the testimony" of two "generally unbiased" contractors, one of whom testified that the apartment was "trashed." *Cutler v. Lazzara (In re Lazzara)*, 287 B.R. 714, 719–22 (Bankr.N.D.Ill. 2002).

Quite the opposite, Creditor, in the instant matter, has not provided this Court with any comparable photographic evidence or any witnesses from which the Court could reasonably infer the intent, scope, or the context in which the claimed damage might have occurred. The evidence introduced by Creditor tends, at most, to establish what might be 'wear and tear' or even negligence and thus an expected—although admittedly costly—burden of being a landlord. *See In re Lazzara*, 287 B.R. at 723–24 (surveying cases which hold that "debtor's failure to maintain rental property ... without more, is not enough to support a claim of dischargeability under 11 U.S.C. § 523(a)(6).").

As stated previously, a failure to prove 'willful' damage typically means a court will usually, though not always, be hard pressed to find facts which support a finding of 'malicious' damage also. In the matter before the Court, there is nothing to indicate that this case is any different. Therefore, since Creditor has not, by a preponderance of the evidence, shown that Debtor acted 'willfully,' the issue of any 'malicious' conduct need not be addressed further.

Notwithstanding the finding of a lack of 'willful' and 'malicious' conduct by Debtor, the record does not clearly show when the alleged debt of $4,075.00 actually arose. However, the record is clear on two facts: (1) Debtor lived in the apartment at the time she filed the petition on August 18, 2005; (2) Debtor surrendered possession of the apartment on August 15, 2005.[4] Thus, there exists the possibility that many of the damages arose postpetition. If true, such damages are excluded from discharge under § 727(b) which substantively provides "that a discharge under Chapter 7 relieves a debtor of all debts incurred prior to the filing of a petition for bankruptcy, except those ... debts specifically enumerated in 11 U.S.C § 523(a)." *Rittenhouse v. Eisen*, 404 F.3d 395, 396 (6th Cir.2005). Hence, to the extent that any damage is postpetition, a different forum is more appropriate for the determination of any liability on the part of Debtor to Creditor.

In summary, the weight of the evidence presented does not sufficiently show, by a preponderance of the evidence standard, that Debtor 'willfully' and 'maliciously' caused the alleged $5,388.00 worth of damage to Creditor's property. In reaching the conclusions herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

. ***ORDERED*** that the Complaint of the Plaintiffs, Tiffany Square Family L.P. and

---

4. During the Trial, it was determined that Debtor moved out from the apartment in mid-September but did not surrender the keys to Creditor until October 15, 2005. This fact was established by evidence entered by Creditor by way of an Affidavit, (Pl.Ex. 9) and Work Order, (Pl.Ex. 1), stating that a fellow resident accepted the keys from Debtor. Since Debtor did not offer any evidence in rebuttal, the Court finds that October 15, 2005 is the date Debtor surrendered possession and Creditor could have re-entered the property to take possession.

Benjamin Alli, be, and is hereby, DISMISSED.