ELECTRONIC CITATION:  2002 FED App. 0003P (6th Cir.)
File Name:  02b0003p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

In re:  DANIEL LEET,             )
                               )
        Debtor.              )
_____ )
                               )
OHIO FARMERS INSURANCE     )
COMPANY; and DANIEL BARNES,  )
                               )
        Plaintiffs-Appellees,   )
                               )
        v.                )     NO. 01-8046
                               )
DANIEL LEET,             )
                               )
        Defendant-Appellant.  )
_____ )

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Youngstown Division.
No. 00-43392, Adv. P. No.  01-4067.

Submitted on Briefs: February 6, 2002

Decided and Filed:  March 26, 2002

Before: AUG, BROWN, and COOK, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF**:  Maurus G. Malvasi, Girard, Ohio, for Appellant.  Carole A. Lohr, Cleveland, Ohio, for Appellees.

_____

**OPINION**

_____

JOHN C. COOK, Bankruptcy Appellate Panel Judge. This is an appeal by Daniel Leet, the Debtor, from an interlocutory order of the bankruptcy court permitting two creditors, Ohio Farmers Insurance Company and Daniel Barnes ("Creditors"), to proceed with their complaint to determine dischargeability under 11 U.S.C. § 523 despite the fact that the complaint was filed two days late. The bankruptcy court invoked 11 U.S.C. §105(a) and its equitable powers to extend the deadline by two days, finding that the Creditors' attorney in Cleveland, Ohio, had mailed the complaint by regular mail to the bankruptcy court clerk's office in Youngstown, Ohio, before the close of business on March 8, 2001, in what should have been sufficient time to assure its arrival on March 12, 2001, the filing deadline. The court further found that counsel's expectation of a timely filing was reasonable and that she did not intend any delay. Upon examination of the record and the briefs, the Panel unanimously agrees that oral argument would not significantly aid the decisional process in this appeal. Fed. R. Bank. P. 8012. For the reasons stated, we **REVERSE** and **REMAND** for dismissal of the complaint.

## I. ISSUE AND SCOPE OF REVIEW

The single issue in this case is whether or not the bankruptcy court erred in allowing the Creditors to file their dischargeability complaint two days past the deadline provided for in Fed. R. Bankr. P. 4007(c). The question presented is a legal one subject to de novo review. *Nicholson v. Isaacman (In re Isaacman),* 26 F. 3d 629, 631 (6th Cir. 1994); *Nardei v. Maughan (In re Maughan),* 268 B.R. 128, 129 (B.A.P. 6th Cir. 2001). This Panel has jurisdiction under 28 U.S.C. §158(a)(1), which allows district courts, for which we are a substitute under §158(b), to review interlocutory orders of bankruptcy courts. By order of November 19, 2001, we granted permission to the Debtor to bring this appeal.

2

## II. DISCUSSION

In *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S. Ct. 1644 (1992), the Supreme Court rebuffed an argument much like the one made by the Creditors herein when it held that objections to the debtor's claim of exemptions must be filed within the thirty-day time period provided for in Fed. R. Bankr. P. 4003(b) or be waived. The bankruptcy court had employed its supposed equitable powers to escape the confines of the rule and permit an out-of-time objection because it believed that the debtor had claimed the exemption in question without any statutory basis for so doing.

The Supreme Court rejected what it called this "good faith" exception to the thirty-day time period in Rule 4003(b) and observed that *"[b]y negative implication*, the Rule indicates that creditors may not object after 30 days 'unless, within such period, further time is granted by the court.'" *Id.* at 643 (emphasis added). The Court then noted that the debtors and their attorneys faced other penalties or sanctions for improper conduct, including those mentioned in 11 U.S.C. § 727 and Fed. R. Bankr. P. 9011, and it concluded simply that it had "no authority to limit the application of [11 U.S.C.] § 522(l) to exemptions claimed in good faith." *Id.* at 645.

Rule 4003(b),[1] the focus of attention in *Taylor*, is similar to the rule at issue in this case, Rule 4007(c),[2] in that both rules provide a time limit within which papers must be filed. Subsequent to the *Taylor* decision, Fed. R. Bankr. P. 4003(b) was amended so that both Rules 4003(b) and 4007(c) now specify that motions for extensions of the time limit

---

[1] At the time the Supreme Court decided *Taylor*, Fed. R. Bankr. P. 4003(b) provided in pertinent part:
   The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) or the filing of any amendment to the list or supplemental schedules unless, within such period, further time is granted by the court.

[2] Fed. R. Bankr. P. 4007(c) provides:
   A complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a). The court shall give all creditors no less than 30 days' notice of the time so fixed in the manner provided in Rule 2002. On motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired.

3

must be made within the original time period specified by the rule.[3]  Thus, if the Supreme Court were reviewing this case, we think it would conclude that the bankruptcy court erred when it ignored the fact that the complaint was not filed by the original deadline.  We also think it would find, as it did in *Taylor*, that deadlines were important products of the bankruptcy rules and that they should not be doctored with equitable considerations derived from 11 U.S.C. § 105(a).[4]

If *Taylor* were not enough to convince one that time limits imposed by official rules are to be honored, there is the more recent case of *Carlisle v. United States*, 517 U.S. 416, 116 S. Ct. 1460 (1996) to hammer the point home.  In *Carlisle* the issue was whether the provisions of Fed. R. Crim. P. 29(c) permit a district court to entertain a motion for judgment of acquittal filed one day late.  Rule 29(c) provides *inter alia* that "a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged or within such further time as the court may fix *during the 7-day period*."  Fed. R. Crim. P. 29(c) (emphasis added).  Rule 29(c) is thus similar in kind to Bankruptcy Rules 4003(b) and 4007(c) in the delineation of time periods and the prescription of rules for their extension.

The Supreme Court held that courts had "no authority" to extend the filing deadlines of rules, even where a criminal defendant's lawyer erred in filing the motion for judgment of acquittal just one day late. *Carlisle*, 517 U.S. at 433.  It held that "the case law of this Court . . . does not establish any 'inherent power' to act in contravention of applicable

---

[3] As amended, Fed. R. Bankr. P. 4003(b) currently provides:
> A party in interest may file an objection to the list of property claimed as exempt only within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later.  The court may, for cause, extend the time for filing objections if, before the time to object expires, a party in interest files a request for an extension.

[4] Although the Supreme Court in *Taylor* refused to consider 11 U.S.C. § 105(a) because it had not been raised in the petition for certiorari or argued in the lower courts, there was nothing in *Taylor* to suggest that equitable considerations derived from § 105(a) would be sufficient to warrant extension of rule deadlines. Moreover, it appears in *Taylor* that the petitioner's reliance on § 105(a) in seeking a disallowance of exemptions not claimed in good faith stemmed from the express language of § 105(a) that states in part that "[n]o provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action . . . *to prevent an abuse of process*."  11 U.S.C. § 105(a)(emphasis added); *Taylor*, 503 U.S. at 645.  Nothing in the case before us suggests any abuse of process.

Rules," and further stated that "we are not at liberty to ignore the mandate of Rule 29 in order to obtain 'optimal' policy results." *Id.* at 428, 430. The Court concluded:

> The only evident "rationale" behind Rule 29(c)'s 7-day time limit is that a motion for judgment of acquittal filed eight days after trial is a motion filed one day later than *justice and equity* demand. As we said in a case involving the filing deadline of the Federal Land Policy and Management Act of 1976, 43 U.S.C. § 1744 (1988 ed.): "If 1-day late filings are acceptable, 10-day late filings might be equally acceptable, and so on in a cascade of exceptions that would engulf the rule erected by the filing deadline; yet regardless of where the cutoff line is set, some individuals will always fall just on the other side of it."

*Id.* at 430 (emphasis added)(quoting *United States v. Locke*, 417 U.S. 84, 101, 105 S. Ct. 1785, 1796 (1985)).

In *Carlisle* the Court emphasized that "plain and unambiguous" rules leave "no room" for granting extensions, even where papers are filed late due to attorney error.[5] *Id.* at 421. There is "no room" because rules are drafted and assembled into systems so as to provide precise solutions to recurrent problems in the law, such as the problem of how to proceed in bankruptcy court or the district court or the appellate courts. The drafter's goal is, above all, a coherent plan of procedure with the details carefully worked out to assure clarity and eliminate internal conflicts, thereby to arrive at a finished body of work capable of an easy and confident application. The intention behind a set of rules, therefore, is that it is to be applied en bloc, without external assistance or modification. The same may be said of the individual rules within the system, drafted to deal precisely with a certain situation and designed to exclude, at least by implication, other possible outcomes. Thus, exceptions to rules are usually spelled out in the rules themselves, and it is not intended that other exceptions drawn from the far corners of all jurisprudence be imported to modify the carefully balanced system. Rules and their systems generally look inward.

---

[5] It is arguable that the case before us is a case of attorney error: the Creditor's attorney knew time was relatively short yet chose a method of delivery, the regular mail, that does not guarantee delivery at all, much less delivery by a certain date. A faster service guaranteeing delivery might have been a better choice under these circumstances, and a telephone call to the clerk's office to confirm delivery might also have been prudent.

The Creditors rely primarily on two cases to anchor their position. First, they assert that the Sixth Circuit threw open the doors to the equitable revision of the bankruptcy rules in *In re Isaacman,* 26 F.3d at 629. In *Isaacman*, the court permitted the late filing of an adversary proceeding under Rule 4007(c) where the bankruptcy court itself had mistakenly sent out two different and conflicting notices of a filing deadline. Since the confusion was caused solely by the bankruptcy court, the Sixth Circuit held that the bankruptcy court would be required to correct its own mistake through the use of its equitable powers granted by 11 U.S.C. § 105(a). *See id.* at 632-33.

*Isaacman* has been read narrowly by the courts of this circuit which, like the bankruptcy court for the Southern District of Ohio, have concluded that *Isaacman*

> carved out one minor exception to the widely-accepted rule that Rule 4007(c)'s Bar Date can be enlarged only pursuant to a motion filed by a party in interest prior to its expiration. This exception has been very narrowly applied, and only in situations where the court itself made an error that resulted in the untimely action of a creditor.

*In re Gorrell,* 260 B.R. 848, 851 (Bankr. S.D. Ohio 2001); *accord Peerless Ins. Co. v. Miller (In re Miller),* 228 B.R. 399, 402 (B.A.P. 6th Cir. 1999) (holding that the Sixth Circuit restricted *Isaacman* to its facts); *In re Lufkin,* 256 B.R. 876, 880 (Bankr. E.D. Tenn. 2000) ("[T]he *Isaacman* holding was expressly limited to its exceptional facts."). Indeed, the Supreme Court has decided a similar case in which it confirmed the narrowness of this exception that allows courts to repair damage they have inadvertently caused. "This Court has recognized *one sharply honed exception* to rules of the 29(c)/45(b) genre. That exception covers cases in which the trial judge has misled a party who could have--and probably would have--taken timely action had the trial judge conveyed correct, rather than incorrect, information." *Carlisle,* 517 U.S. at 435 (Ginsburg, J., concurring) (emphasis added). Thus, *Isaacman* falls within the category of cases in which the court itself participates in the foul-up. The obvious purpose of these cases is to protect the courts from accusations that *they* derailed justice by giving them the power to correct their own mistakes. The concerns are institutional and are aimed at allowing courts to maintain their appearance of impartiality by remaining above the fray of litigation. The most recent

6

addition to this class of cases is *Landmark Cmty. Bank, N. A. v. Perkins (In re Perkins)*, 271 B.R. 607 (B.A.P. 8th Cir. 2002) in which the Eighth Circuit Bankruptcy Appellate Panel simply followed *Isaacman* to the same conclusion where a court clerk's website posted erroneous information that led to a late filing.

The other case principally relied on by the Creditors is *First Bank Sys., N.A. v. Begue (In re Begue),* 176 B.R. 801 (Bankr. N.D. Ohio 1995), wherein a creditor attempted to file a dischargeability complaint by placing it in the mail seven days prior to the filing deadline. It did not reach the court on time, but the bankruptcy court treated the rule's deadline as a statute of limitations and permitted the tolling of the statute of limitations under two circumstances: "(1) where defendant's wrongful conduct prevented plaintiff from timely asserting his claim, or (2) where extraordinary circumstances outside plaintiff's control make it impossible for plaintiff to timely assert his claim." *Id.* at 804 (citing *Forti v. Suarez Mason*, 672 F. Supp. 1531, 1549 (N.D. Cal. 1987)).

The great majority of decisions within this circuit have distinguished or rejected *Begue. In re Gorrell,* 260 B.R. 848, 852 (Bankr. S.D. Ohio 2001) (distinguishing *Begue* as a case of accident beyond the creditor's control "[w]ithout reaching the question of whether Rule[ ] 4007(c) . . . constitute[s] a constraint on the Court's jurisdiction, or merely establish[es] a statute of limitations"); *In re Lufkin,* 256 B.R. 876, 879-80 (Bankr. E.D. Tenn. 2000) (rejecting *European Am. Bank v. Benedict (In re Benedict),* 90 F.3d 50, 53-54 (2d Cir. 1996), which had followed *Begue's* line of reasoning); *Fugate v. Pack (In re Pack),* 252 B.R. 701, 707 (Bankr. E.D. Tenn. 2000) (rejecting *Begue* and observing that "it is not that uncommon for mail to be delayed and on rare occasions, even lost. A party who seeks to commence an adversary proceeding objecting to discharge by mail does so at its own risk as to the date of the commencement of the proceeding.")(citation omitted); *First Deposit Nat'l Bank v. Glover (In re Glover),* 212 B.R. 860, 862 n. 2 (Bankr. S.D. Ohio 1997)(rejecting both *Begue* and *Benedict*). Most of these courts agree with the majority

rule that the time limits in Rule 4007(c) are "jurisdictional,"[6] i.e., that they are immutable and not affected by equitable defenses or considerations.

Had it been decided before submission of this appeal, the Creditors might have sought support in the Supreme Court's recent decision in *Young v. United States*, No. 00-1567, 2002 WL 331738 (March 4, 2002), where the Court approved the equitable tolling of 11 U.S.C. § 523(a)8)(A)(i)'s three-year lookback period during the pendency of the chapter 7 debtors' prior chapter 13 case. Some may read that decision broadly, since the Court observed that "[i]t is hornbook law that limitations periods are 'customarily subject to 'equitable tolling','" but that statement was finished with its own restriction, "unless tolling would be 'inconsistent with the text of the relevant statute.'" *Id.* at * 5 (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95, 111 S. Ct. 453 (1990) and *United States v. Beggerly,* 524 U.S. 38, 48, 118 S. Ct. 1862 (1998)). By analogy, the applicable Rule 4007(c) requires that any extension of the sixty-day limitation be sought within that time period; thus, the equitable tolling applied by the bankruptcy court in this case was inconsistent with the text of the relevant rule. Our conclusion is not changed by *Young.*

### III. CONCLUSION

The Supreme Court's discussions of the operations of Fed. R. Bankr. P. 4003(b) in *Taylor* and Fed. R. Crim. P. 29(c) in *Carlisle* apply with equal force to Fed. R. Bankr. P. 4007(c). Rules regarding deadlines have a salutary effect, as the Supreme Court noted, and systems of rules often contain within themselves their own written exceptions. Where the exceptions are specified, it would seem anomalous to allow the contamination of the system by legal concepts foreign to it. If the drafters of the rules had intended the exception urged by the Creditors, it should logically appear in the rules.

---

**6** We do not think any real light is shed on the subject by calling the time limits established by rules "jurisdictional," and we view usage of the term as a shorthand denomination of the idea that rules exist, not just to regulate the parties, but in some cases to limit courts in the exercise of their powers and discretion. Justice Ginsburg has criticized the usage, stating, "It is anomalous to classify time prescriptions, even rigid ones, under the heading 'subject matter jurisdiction.'" *Carlisle v. United States*, 517 U.S. 416, 434, 116 S. Ct. 1460, 1470 (1996) (Ginsburg, J. concurring) (citing, *inter alia,* her opinion in *Center for Nuclear Responsibility, Inc. v. United States Nuclear Regulatory Comm'n,* 781 F.2d 935, 945, n. 4 (D.C. Cir. 1986)(Ginsburg, J. dissenting), which questions the "profligate use" of the word "jurisdiction" in respect to time limits for appeal). It is interesting to observe that the majority opinion of the Court in *Carlisle* does not use the word "jurisdiction" or any variant thereof except in formally stating the holding of the lower court. *Carlisle*, 517 U.S. at 419.

Thus, most of the courts within this circuit have rejected the rationale in *Begue*. Moreover, *Begue's* reasoning and authority are suspect because the opinion does not *mention*, much less stand up to, the Supreme Court's discussion of rules deadlines in *Taylor*. (*Begue* predates *Carlisle*). For these reasons, we conclude that the bankruptcy court should have enforced Rule 4007(c) according to its letter. Because it did not, the interlocutory order of the bankruptcy court is **REVERSED** and this proceeding is **REMANDED** to the bankruptcy court with instructions to dismiss the Creditors' complaint.