*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to 6th
Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

**File Name: 08b0013n.06**

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re: BRUCE AND SHEREE GILPIN, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| MCS ACQUISITION CORP. d/b/a | ) | No. 07-8031 |
| MOBILE CONTAINER SERVICE, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRUCE GILPIN AND SHEREE GILPIN, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division.
No. 07-40471

Argued: May 13, 2008

Decided and Filed: July 17, 2008

Before: FULTON, PARSONS, and SCOTT, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** Jonathan P. Blakely, BERNLOHR WERTZ, L.L.P., Akron, Ohio, for Appellant. Frank
X. Gresley, LAW OFFICE OF FRANK X. GRESLEY, Parma, Ohio, for Appellees. **ON BRIEF:**
Jonathan P. Blakely, BERNLOHR WERTZ, L.L.P., Akron, Ohio, Kevin T. Fogerty, LAW OFFICES

-1-

OF KEVIN T. FOGERTY, Allentown, Pennsylvania, for Appellant. Frank X. Gresley, LAW OFFICE OF FRANK X. GRESLEY, Parma, Ohio, for Appellees.

---

## OPINION

---

THOMAS H. FULTON, Bankruptcy Appellate Panel Judge. MCS Acquisition Corp. d/b/a Mobile Container Service ("MCS") appeals the bankruptcy court's order denying its motion for relief from the automatic stay in the bankruptcy case of Bruce and Sheree Gilpin. MCS sought relief to enforce in Pennsylvania state court a previously issued injunction enjoining Mr. Gilpin from violating a noncompetition agreement. Because we conclude that the bankruptcy court erred in concluding that the equitable right to enforce the noncompetition agreement was a claim under 11 U.S.C. § 101(5)(B) and in failing to give full faith and credit to the state court's determination that the agreement was reasonable, we reverse and remand.

### I. ISSUES ON APPEAL

The issues presented on appeal are (1) whether the bankruptcy court abused its discretion when it adjudged that MCS's equitable rights under the covenant not to compete constituted a claim under 11 U.S.C. § 101(5)(B); and (2) whether the bankruptcy court abused its discretion in failing to give full faith and credit to a prior state court order that adjudged the terms of the covenant to be reasonable.

### II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit ("BAP") has jurisdiction to hear and decide this appeal. 28 U.S.C. § 158(b)(1). The United States District Court for the Northern District of Ohio has authorized appeals to the BAP, and neither party to this appeal has elected to have it heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). A party may appeal a bankruptcy court's final order as a matter of right. 28 U.S.C. § 158(a)(1). An order denying stay relief under 11 U.S.C.

§ 362(d) is a final order for purposes of 28 U.S.C. § 158(a)(1). *In re Schaffrath*, 214 B.R. 153, 154 (B.A.P. 6th Cir. 1997).

Three standards of review apply in this case. Legal conclusions are reviewed *de novo*; factual findings are reviewed for clear error; and the denial of a motion for relief from the automatic stay "for cause" under 11 U.S.C. § 362(d)(1) is an equitable determination reviewed for an abuse of discretion. Fed. R. Bankr. P. 8013; *AmeriCredit Fin. Servs., Inc. v. Nichols (In re Nichols)*, 440 F.3d 850, 856 (6th Cir. 2006); *Spierer v. Federated Dept. Stores, Inc. (In re Federated Dept. Stores, Inc.)*, 328 F.3d 829, 832, 836 (6th Cir. 2003). An abuse of discretion occurs when a bankruptcy court "relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Lorain NAACP v. Lorain Bd. of Educ*, 979 F.2d 1141, 1148 (6th Cir. 1992) (internal quotations omitted).

## III. FACTS

MCS purchased Mobile Container Service, Inc. ("Mobile") as an ongoing business from its sole shareholder, Michael Sisselberger ("Sisselberger") on March 25, 2002. Headquartered in Allentown, Pennsylvania, Mobile provided services maintaining, repairing, and refurbishing waste containers to clients in Pennsylvania, New Jersey, and Delaware, with minor business activities in New York and Maryland. In order to effectuate the purchase as an ongoing operation, several of Mobile's key employees, including Sisselberger and Bruce Gilpin (the "Debtor"), were to remain employed by Mobile (under new ownership) and sign noncompetition agreements. The agreement signed by the Debtor stated in pertinent part the following:

> 2. NONCOMPETITION AND NONSOLICITATION - In consideration of [MCS's] employment, [Debtor] agrees that:
>
> (a) For a period of two (2) years after [the Debtor] ceases employment with [MCS], for whatever reason, whether voluntarily or involuntarily:
>
> (i) [The Debtor] will not, directly or indirectly, engage or invest in, own, manage, operate, finance, control or participate in the ownership, management, operation, financing or control of, be employed by, associated with or in any manner connected with, or render services or advice or other aid to, any person or entity engaged in or planning to become engaged in the repair, refurbishing, or maintenance of waste refuse containers, anywhere within a 100 mile radius of both Allentown, PA

-3-

or anywhere else in Pennsylvania, Delaware, or New Jersey where [MCS] is repairing, refurbishing, and maintaining waste refuse containers.

. . . .

(b)  In the event of a breach by [the Debtor] of any covenant set forth in Subsection 2(a) above, the term of such covenant will be extended by the period of the duration of such breach. . . .

3.  This agreement shall be governed by Pennsylvania law.  In connection with enforcing this Agreement, [MCS] may seek injunctive or equitable relief, in addition to damages, and [MCS] shall be entitled to reasonable attorneys' fees should it prevail, either in part or in whole.

(J.A. at 140.)  After the closing on March 25, 2002, the Debtor remained employed by MCS until his resignation on June 6, 2003.

Subsequently, MCS became aware of business activities it believed amounted to violations of the noncompetition agreements.  Consequently, MCS sued the Debtor and others in the Court of Common Pleas of Lehigh County, Pennsylvania ("State Court"), seeking damages and equitable relief for the alleged breach of the noncompetition agreements.  After a several-day bench trial, the State Court issued a thirty-five page verdict on February 24, 2006, detailing its findings of fact and conclusions of law.  The State Court found that the Debtor and the other defendants had violated the noncompetition agreements by forming Professional Container Services, Inc. (PCS), an entity that engaged in the same business as MCS and within the same geographic area proscribed by the noncompetition agreement.   The State Court also found that after PCS ceased doing business in August or September 2004, the Debtor started another company, Gilpin Welding and Repair, which was essentially a continuation of the business of PCS, operating within the same prohibited area. The State Court concluded that the noncompetition agreements were reasonable, and that MCS had no adequate remedy at law.  (J.A. at 100-01.)

On July 25, 2006, the State Court entered judgment against the Debtor, awarding compensatory damages, punitive damages and attorneys' fees, and permanently enjoining him and the other defendants from violating their noncompetition agreements with MCS.  The judgment also contained a declaratory judgment that the restrictive covenants in the Debtor's noncompetition agreement were extended up through and including May 6, 2007.  The Debtor did not file any post

judgment motions or appeals, and the judgment against him became final.  *See MCS Acquisition Corp. v. Mobile Container Serv., Inc.*, No. 2003-E-61 (Pa. Ct. C. P., Lehigh County Jul. 25, 2006) (J.A. at 66-106.).

On March 7, 2007, the Debtor and his wife, Sheree Gilpin, filed a petition for bankruptcy relief under chapter 7.  On April 13, 2007, MCS moved for relief from the automatic stay, 11 U.S.C. § 362(d)(1), alleging that the Debtor had continued to violate the noncompetition agreement and seeking leave to request that the State Court enforce its July 25, 2006 order by extending the injunction against the Debtor for an additional two-year period.  MCS specifically stated in its motion that it was not seeking to enforce any provision of the judgment relating to an award of damages nor was it seeking further monetary relief.

The Debtor filed an objection to MCS' motion for relief, and a hearing on the motion was conducted on May 17, 2007.  At the hearing, counsel for the Debtor argued that the injunction was a dischargeable claim under 11 U.S.C. § 101(5) that had expired two weeks prior to the hearing. Counsel also argued that substantial legal fees had been incurred in the State Court and that the Debtor had suffered unduly under the "stranglehold of some unreasonable noncompete agreement which was . . . extended well past where it should have been extended."  (J.A. at 176.)

On May 21, 2007, the bankruptcy court entered an order denying MCS's motion for stay relief.  The court's order did not set forth the basis of its decision, but the statements made by the court at the conclusion of the May 17, 2007 hearing indicate the court's legal conclusions:

> I guess I'm very concerned about what MCS Acquisition Corp. is attempting to do here.
>
> It does appear that it has a claim.  If there has been a breach of the judgment that it obtained in Pennsylvania, it seems like it can be quantified in some sort of monetary damages.
>
> The injunction has expired, the extension of the judgment, and the purpose of a noncompete agreement is not to deprive the other party of the ability to earn a living, but is to protect the parties, such as your client, from unfair competition.
>
> This sale occurred in 2002 or 2003.  It is now 2007.  If there have been damages from the breach of that noncompete, they have already occurred.  Ohio will only enforce a noncompete agreement if it is reasonable in duration and in geographic

area, and MCS appears to want to have an injunction that goes on indefinitely as long as it can prove any violation at all of the original noncompete, and I happen to agree with the debtor in this case, that this claim can be reduced to money damages. I think that the debtors will incur expenses in trying to defend themselves.

Your comment that it failed to appear or they failed to appear in other hearings really only indicates that they may not have been able to afford to do so, and that puts them at a very bad disadvantage, that either they concede that the injunction will be extended for another two years, if that's what your client asks for, or they incur costs. It is not a zero sum gain here.

So, there doesn't appear to be cause to provide MCS Acquisition Corp. with relief from stay. To the extent that your client believes that there are reasons, and I'm not sure if this is still within the applicable statutory period, but your client can always file an adversary proceeding with respect to the dischargeability of its own debt, or the discharge of the debtors in general, which is what I'm actually hearing you argue with respect to the honest debtor.[1]

So it is not really at a disadvantage if it has grounds to do so and it is timely, and I have not looked to see whether it is still timely. This is an '07 case, so it is likely to be, but I don't know.

So I'm going to deny the motion, and I'm going to ask debtors' counsel to submit an order.

This appeal timely followed the court's ruling.

## IV. DISCUSSION

### A. Injunction as "Claim" under 11 U.S.C. § 101(5)(B)

The injunction issued by the State Court had not expired when the Debtor filed his bankruptcy petition, or when MCS filed its motion for relief. Accordingly, for purposes of this analysis, the injunction order extending the terms of the noncompetition agreement is deemed not to have terminated. 11 U.S.C. § 108(c); *see also Young v. United States*, 535 U.S. 43, 49, 122 S. Ct. 1036, 1040 (2002) ("It is hornbook law that limitations periods are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute.") (internal quotations omitted); *cf. Ohio Farmers Ins. Co. v. Leet (In re Leet)*, 274 B.R. 695, 700 (B.A.P. 6th

---

[1] Subsequently, MCS did file an adversary proceeding against the Debtor on June 15, 2007, seeking a determination of nondischargeability of the damages owed to MCS by the Debtor under 11 U.S.C. § 523(a)(6) (willful and malicious injury).

Cir. 2002) (distinguishing jurisdictional time limitations, which are "immutable and not affected by equitable defenses or considerations"). MCS filed its motion for relief prior to the expiration of the injunction, and, but for the automatic stay, MCS could have returned to the State Court and sought another extension of the terms of the injunction before it expired by its own terms.

Section 101(12) of title 11 of the Bankruptcy Code defines "debt" as "liability on a claim." The Bankruptcy Code defines a "claim" as follows:

> (5) The term "claim" means—
>
> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance *if such breach gives rise to a right to payment*, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5) (emphasis added). The consensus among the various circuits for the United States Courts of Appeals is that a right to an equitable remedy does not give rise to a right to payment under § 101(5)(B) when the right to equitable relief is an *alternative* to a right to payment. *See, e.g.*, *In re Udell*, 18 F.3d 403, 409-10 (7th Cir. 1994); *In re Torwico Electronics, Inc.*, 8 F.3d 146, 150 (3d Cir. 1993) (holding that state cleanup order is not a dischargeable claim under 11 U.S.C. § 101(5)(B) because neither the statute nor the court order at issue provided a right to payment); *United States v. LTV Corp. (In re Chateaugay Corp.)*, 944 F.2d 997, 1008 (2d Cir. 1991) (distinguishing between injunction requiring cleanup for past pollution, which may give rise to alternative right to payment under CERCLA, and one enjoining future pollution, which provides no "option to accept payment in lieu of continued pollution"); *see generally Maids Int'l, Inc. v. Ward (In re Ward)*, 194 B.R. 703 (Bankr. D. Mass. 1996) (setting forth the varying analytical approaches among bankruptcy courts to the dischargeability of a debtor's obligations under a covenant not to compete).

With respect to the dischargeability of an injunction imposed against a debtor by a state court order, the Sixth Circuit Court of Appeals has adopted the majority rule. "The right to equitable relief constitutes a claim only if it is an alternative to a right to payment or if compliance with the equitable

order will itself require the payment of money." *Kennedy v. Medicap Pharmacies, Inc. (In re Kennedy)*, 267 F.3d 493, 497 (6th Cir. 2001).

The facts of *Kennedy* are similar to those in the case *sub judice*. In *Kennedy*, the debtors were subject to a covenant not to compete that arose from a franchise agreement with Medicap Pharmacies ("Medicap"). Medicap filed suit in an Iowa state court seeking an injunction against the debtors to enforce the terms of the noncompetition agreement. Before the state court issued a final ruling on the injunction, the debtors filed a bankruptcy petition in a bankruptcy court in the Western District of Kentucky. *In re Kennedy*, 267 F.3d at 495.

Medicap then filed an adversary proceeding objecting to discharge of the injunctive relief and seeking relief from the automatic stay on the ground that the debtors' obligations under the injunction were nondischargeable. The bankruptcy court granted summary judgment in favor of Medicap and terminated the automatic stay so that Medicap could continue its suit for injunctive relief against the debtors in state court. *In re Kennedy*, 267 F.3d at 495. The Sixth Circuit Court of Appeals affirmed, reasoning that because compliance with the injunction would not require the expenditure of money, rather it required only that the debtors cease violating the terms of the covenant not to compete *going forward*, Medicap's right to injunctive relief did not "equate to being a claim." *Id.* at 497-98.

As in *Kennedy*, MCS is not seeking damages as a result of the Debtor's alleged violations of the State Court injunction. Rather, MCS seeks relief from the automatic stay so that it can return to the State Court and enforce the terms of the noncompetition agreement by obtaining an extension of the injunction. Under the noncompetition agreement, "the terms of [any covenant breached by the Debtor] will be extended by the period of the duration of such breach." The State Court enforced this provision once already, extending the proscriptions of the Debtor's noncompetition agreement to May 6, 2007. If MCS's allegations are true that the Debtor consistently violated the terms of the noncompetition agreement between August 15, 2005, and March 6, 2007, then the terms of the noncompetition agreement that would otherwise have expired in May 2007 could presumably be extended an additional nineteen months.

The fact that the Debtor will need to pay for legal services to defend his actions in the State Court does not equate to the expenditure of money in connection with the injunction. Legal fees are not the type of expenditure to which the Sixth Circuit Court of Appeals was referring in *Kennedy*. The payment of money to which the Sixth Circuit refers is to *comply* with the injunction. *In re Kennedy*, 267 F.3d at 497. Compliance with the relief sought by MCS would not require the payment of money by the Debtor. Rather, the Debtor would be required only to cease his alleged violation of the noncompetition agreement and the injunction granted in connection therewith.

MCS's right to enforce its noncompetition agreement by equitable relief does not constitute a claim under 11 U.S.C. § 101(5)(B). The bankruptcy court's ruling to the contrary was erroneous and, therefore, an abuse of discretion.

## B. Collateral Estoppel

The bankruptcy court held that the noncompetition agreement signed by the Debtor was unreasonable and thus unenforceable under Ohio law because of its duration and geographic scope.[2] Because the State Court had already adjudicated the reasonableness and enforceability of the noncompetition agreement with respect to the Debtor, the bankruptcy court was collaterally estopped from revisiting this determination.

Property interests are created and defined by state law even when an interested party is involved in a bankruptcy proceeding, unless some federal interest requires a different result. *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918 (1979). Although a debtor's obligation under a noncompetition agreement might be dischargeable in bankruptcy, a property interest that results from a noncompetition agreement—entitlement to equitable relief, in this case—does not conflict with bankruptcy law and is governed by state law. *See, e.g.*, *In re Kennedy*, 267 F.3d at 493; *In re*

---

[2] For the reasons stated in this opinion, as well as the choice of law provisions in the employment and noncompetition contracts at issue, Ohio law is inapplicable to any inquiry as to the enforceability of the noncompetition agreements as well as the question of collateral estoppel. *See generally* 28 U.S.C. § 1738; *Schulke Radio Prods., Ltd. v. Midwestern Broad. Co.*, 453 N.E.2d 683, 685-86 (Ohio 1983); Restatement (Second) of Conflict of Laws §§ 187-88 (2008).

*Hawes*, 73 B.R. 584, 587 (Bankr. E.D. Wis. 1987); *In re Cox*, 53 B.R. 829, 832 (Bankr. M.D. Fla. 1985); *In re Cooper*, 47 B.R. 842, 845 (Bankr. W.D. Mo. 1985).

In the case *sub judice*, the noncompetition agreement between the Debtor and MCS provided that Pennsylvania law governed the contract. In its July 25, 2006 opinion, the State Court adjudged the terms of the noncompetition agreement signed by the Debtor to be reasonable in temporal and geographic scope, and reasonably necessary to protect MCS's goodwill. (J.A. at 100.)

Notwithstanding this prior determination, the bankruptcy court stated during the May 17, 2007 hearing: "Ohio will only enforce a noncompete agreement if it is reasonable in duration and in geographic area, and MCS appears to want to have an injunction that goes on indefinitely as long as it can prove any violation of the original noncompete . . . ." (J.A. at 179.) However, under 28 U.S.C. § 1738, a federal court must give full faith and credit to the order of a prior state court if another court in the state from which the judgment originated would give it preclusive effect. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S. Ct. 1327, 1331-32 (1985); *Bay Area Factors v. Calvert (In re Calvert),* 105 F.3d 315, 317 (6th Cir. 1997). A federal court should look to the preclusion law of the state in which the original judgment was rendered for the proper standard to apply. *Marrese*, 470 U.S. at 380; *In re Calvert,* 105 F.3d at 317; *cf. Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 305 (B.A.P. 6th Cir. 2004) ("Federal common law governs the claim-preclusive effect of all federal court judgments.").

Under Pennsylvania law:

> The doctrine of collateral estoppel precludes relitigation of an issue determined in a previous action if: (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.

*Office of Disciplinary Counsel v. Kiesewetter*, 889 A.2d 47, 50-51 (Pa. 2005) (citing *Office of Disciplinary Counsel v. Duffield*, 644 A.2d 1186, 1189 (Pa. 1994)).

Applying the factors mandated by Pennsylvania's law on collateral estoppel, the State Court's final order enforcing the noncompetition agreement between the Debtor and MCS was entitled to full faith and credit by the bankruptcy court. The State Court decided the precise issue revisited by the bankruptcy court, *viz.*, whether the noncompetition agreement at issue was reasonable and enforceable. The prior trial reached a final adjudication on the merits. The Debtor was a party in the previous litigation, and there is no suggestion that the Debtor was deprived of a "full and fair" opportunity to litigate the issue in the State Court action. Finally, the determination regarding the reasonableness and enforceability of the noncompetition agreement was essential to resolution of the previous litigation. Because these conclusions are entitled to full faith and credit, the bankruptcy court was collaterally estopped from entering a ruling to the contrary. *See* 28 U.S.C. § 1738; *In re Calvert,* 105 F.3d at 317.

## V. CONCLUSION

The denial of a motion for relief from the automatic stay "for cause" under 11 U.S.C. § 362(d)(1) is an equitable determination reviewed for an abuse of discretion. An abuse of discretion occurs when a bankruptcy court "relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Lorain NAACP v. Lorain Bd. of Educ*, 979 F.2d at 1148 (internal quotations omitted). In this case, the bankruptcy court improperly applied the law in concluding that MCS's right to equitable relief under the noncompetition agreement and the State Court's injunction constituted a "claim" under 11 U.S.C. § 101(5)(B). The bankruptcy court also improperly applied the law in evaluating the enforceability of the noncompetition agreement under Ohio law since it was collaterally estopped from doing so. Accordingly, the bankruptcy court abused its discretion in denying MCS's motion for relief from the automatic stay. The bankruptcy court's order is REVERSED and this case is REMANDED to the bankruptcy court for further proceedings consistent with this opinion.

-11-